## COHEN, FRIEDLANDER & MARTIN CO. v. MASSACHUSETTS MUT. LIFE INS. CO.

No. 10469.

Circuit Court of Appeals, Sixth Circuit.

Feb. 5, 1948.

Writ of Certiorari Denied May 17, 1948.

See 68 S.Ct. 1086.

George R. Effler, of Toledo, Ohio, for appellant.

Ross Shumaker, of Toledo, Ohio (Fraser, Shumaker, Kendrick & Winn, of Toledo, Ohio, on the brief; Ross W. Shumaker and John W. Winn, both of Toledo, Ohio, of counsel), for appellee.

Before SIMONS, ALLEN, and McALLISTER, Circuit Judges.

## McALLISTER, Circuit Judge.

Appellant corporation and its president, Hyman Blitz, made application, on August 29, 1945, to appellee insurance company for an insurance policy upon the life of Blitz, to be payable to the corporation as beneficiary. The application, which provided that it should form the basis of the contract of insurance applied for and which also provided that it should become part of the contract when issued, set forth and represented, in answer to questions relating to his physical condition, that Blitz had never had any symptoms of heart trouble, or suffered from heart disease. These representations were true, or, at least, true as far as appellant and Blitz were aware. On August 30 and August 31, 1945, he was examined at the request of the insurance company by two physicians designated by it, and neither of the examinations disclosed any heart defects or disease or other health defects affecting the insurability of Blitz.

Neither the annual premium on the insurance nor any part thereof was paid to the insurance company or its agent at, or prior to, the time that the application was made on August 29, 1945. Such premium was paid at the time the insurance company delivered the policy of insurance to appellant corporation on September 19, 1945.

However, on September 12, 1945, one week prior to the delivery of the policy to appellant and payment of the premium therefor, Blitz suffered a severe heart attack, known as angina pectoris with coronary thrombosis. Five days after the first attack and two days before the payment of the premium and the delivery of the policy. he suffered another similar attack. During the period between these attacks, he was in a critical condition under the care of physicians.

During the period from the time when the application for the policy was filed on August 29th, until September 17th, the date of Blitz's second heart attack, the insurance company was making an investigation of facts disclosed by the periodic health examinations of Blitz which were referred to in the application for insurance. On September 17th, these investigations were completed and disclosed no evidence of heart diseases or defects or any other health defects. Two days later, the policy was delivered to appellant company and it was at that time that the annual premium on the insurance was first paid by appellant. A little more than six months later, Blitz died as a result of a third heart attack on March 31, 1946.

When the policy was finally delivered, the insurance company knew nothing of any disease or illness suffered by Blitz during the intervening period between the time of the application for the policy and its approval and delivery by the insurance company. It acquired its first knowledge of the several heart attacks on or about April 18, 1946, when it received the notice of claim and proof of death of Blitz which was filed with the insurance company by appellant corporation. After an investigation of the facts thereby disclosed, the in-

surance company served notice of cancellation and rescission of the policy and tendered to appellant the amount of the premium which had been paid, with legal interest from the time it had been received. Thereafter, the insurance company filed a complaint to cancel and rescind the policy. After hearing, the district court entered a judgment decreeing the policy of insurance to be null and void on the ground that good faith required the appellant, pending approval of the application for insurance, to disclose any conditions affecting the risk that occurred subsequent to the application for, and prior to the issuance of, the policy; that appellant had knowledge that Blitz's heart attacks occurred in this intervening period; that such circumstances affected the insurability of Blitz and the risk contracted against; that in contracts of insurance, *uberrima fidis*—"the most perfect good faith"—was required of the parties to the contract; and that appellant's non-disclosure of the pertinent facts showed a want of such good faith, and required cancellation of the contract of insurance.

The question before us is one of law. Appellant claims that the parties contracted on the basis of conditions as they existed on the date of the application and medical examination made by the physicians employed by the insurance company; that the insurance company agreed that the insurance would take effect as of a date prior to the time when appellant acquired knowledge of the change in the physical condition of Blitz; and that, since it was provided that the insurance would become effective at such a prior date, the failure of appellant to inform the insurance company of such change of physical condition was not evidence of bad faith.

Appellant's application for insurance, in this case, contained, among other provisions, the following: "If there has not been paid to the Company's agent the premium on the insurance herein applied for, such insurance shall not become effective until the Company has approved this application at its home office, the first premium has been paid and the policy delivered to me or to the owner designated therein during my lifetime; and that there-

upon the insurance shall become effective upon the date of issue stated in said policy."

In its decision, the district court relied upon the authority of Stipcich v. Metropolitan Life Insurance Co., 277 U.S. 311, 48 S.Ct. 512, 513, 72 L.Ed. 895. In that case, a party, after making his application and before the delivery of the policy, suffered a recurrence of duodenal ulcer which was the cause, subsequently, of his death. Although he consulted physicians who advised an operation for removal of the ulcer, he did not, according to the claim of the insurance company, inform it of his changed condition. The application for insurance in that case provided that "the company shall incur no liability under this application until it has been received, approved, and a policy issued and delivered, and the full first premium stipulated in the policy has actually been paid to, and accepted by, the company during the lifetime of the applicant."

There is very little difference between the Stipcich case and the case before us. In the Stipcich case, the application provided that the company should incur no liability until the application had been approved, the policy delivered, and the premium paid during the lifetime of the applicant. In the instant case, the application provided that the policy would not be effective until the company had approved the application, had delivered the policy, and had been paid the first premium, and that, *thereupon,* the insurance would become effective upon the date of issue stated in the policy. The fact that the insurance liability was to be related back to a prior date, only after the policy was delivered, does not differentiate the case from the Stipcich case. In both, liability was to attach, only upon delivery of the policy.

The Supreme Court observed that an insurer could, of course, assume the risk of such changes in the insured's life as might occur between the date of application and the date of issuance of the policy, and that where the parties contract exclusively on the basis of conditions as they existed at the date of the application, the failure of the insured to divulge any later known

changes in health may well not affect the policy. But the court went on to say that where, by the terms of an application for insurance, no contract came into existence until the delivery of the policy, and at that time the insured had learned of conditions gravely affecting his health unknown at the time of making application for insurance, he was bound to disclose them to the insurance company. "For," said the court, "even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure." In cases involving this question, the court noted that it has been repeatedly declared in many of the leading cases that a statement in the application for insurance is a "continuing representation," or "is made as of the time of the delivery of the policy." (Note page 317 of 277 U.S. 514 of 48 S.Ct.). As the court said: "Insurance policies are traditionally contracts *uberrimae fidei* and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. * * * The obligation (to disclose) was not one stipulated for by the parties, but is one imposed by law as a result of the relationship assumed by them and because of the peculiar character of the insurance contract. The necessity for complying with it is not dispensed with by the failure of the insurer to stipulate in the policy for such disclosure."

We do not find in the decisions of the courts of Ohio any holding that this obligation of disclosure which, as the Stipcich case declared, was an obligation imposed by law, is in any way modified or that it is otherwise changed by statutory provision.

Appellant argues that the rule of the Stipcich case cannot be considered the law in this controversy which arose in the State of Ohio, because of the authority of Erie R. Co. v. Tompkins, 304 U.S. 64,

58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, and Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290. No Ohio cases are relied upon by appellant as controlling, but certain adjudications from other states are referred to as establishing the validity of its contentions. Among the cases cited by appellant, one involved prepayment of the premium, and, therefore, completion of the contract of insurance when the application was accepted; in other cases, agents knew of the illness of the applicants subsequent to the application; or the insured, himself, had no knowledge of the changed condition of his health on the effective date of the policy; or the parties had agreed that the effective date of the insurance liability would be prior to the issuance of the policy. These cases do not involve nondisclosure of the insured's changed physical condition (of which the insurance company was ignorant) prior to the time when the insurance liability became effective; and neither these, nor any other cases cited are applicable to the present controversy. There are no Ohio statutes or decisions of the Ohio courts upon the point in question, and we, accordingly, follow the Stipcich case as the controlling authority.

In accordance with the foregoing, the judgment of the district court is affirmed.