[No. 28508.   Department One.   October 9, 1942.]

LILLIAN AMELIA VERNON, *Respondent,* v. EQUITABLE LIFE ASSURANCE SOCIETY, *Appellant.*[1]

[1]Reported in 129 P. (2d) 801.

*Kerr, McCord & Carey* and *R. B. Albertson,* for appellant.

*Koenigsberg & Sanford,* for respondent.

DRIVER, J.—This is an action on a life insurance policy brought by the beneficiary, the widow of the insured. The appeal was taken by defendant insurance company from a judgment, in favor of the plaintiff, entered after a trial to the court.

On March 25, 1926, appellant issued its ordinary life policy, in the amount of ten thousand dollars, upon the life of Enos G. Vernon. Premiums on the policy were paid as they matured until December 4, 1938, when a semiannual premium, in the amount of $123.40, fell due. Being unable to pay it, the insured applied for, and was granted, an extension of time. In accordance with the provisions of the written extension agreement, the insured paid $49.36, and the appellant, in effect, extended the time for payment of the balance of the premium until April 4, 1939. This balance was never paid.

On July 10, 1939, appellant's New York office notified the insured by letter that, "because of non-payment of the premium due December 4, 1938," the policy had lapsed, and the insurance, in an amount less indebtedness, had been continued as paid-up extended term insurance to July 3, 1939, when the policy was terminated on appellant's records, and was without value.

The policy contained a number of alternative options on surrender or lapse, and provided that, in the event the insured failed to select one of such options within three months after default in the payment of any premium or installment, the insurance should be continued as provided under option (c). Option (c), as it applied to the situation of the insured, was that the insurance would be continued as paid-up extended term insurance for the face amount of the policy, less outstanding indebtedness, and for such period as the net cash value of the policy would purchase, as shown by a table set forth in the policy. The insured had from time to time received from appellant, on the security of the policy, loans, or advances, which, on December 4, 1938, amounted to $1,126.08, and accrued interest.

The insured died on February 2, 1940. He had not made a selection of any option under the policy. On February 9th, in answer to an inquiry made by a brother of respondent beneficiary, appellant wrote:

"We are very sorry to inform you that the policy referred to above is without value. Premiums were paid to December 4, 1938 and further extended to April 4, 1939, at which time the policy lapsed and a loan of $1460.68 was foreclosed.

"After that time the policy operated under the Extended Term Provision until July 3, 1939. The extended term insurance amounted to $8495.38."

Respondent contended, and the trial court held, first, that the appellant had, without authorization therefor in the loan provisions of the policy, charged compound interest on the advances made to the insured; and, second, that, if simple interest only had been charged, there would have been sufficient reserve available, upon default, to purchase extended term insurance to well beyond the date of the death of the

insured. As we have concluded that we cannot agree with respondent's second contention, we consider it unnecessary to pass upon her first. Throughout this opinion, we shall assume, without deciding, that the appellant improperly charged compound interest on the policy loans of the insured.

On that assumption, the principal question for determination is whether the extended term insurance should have commenced on December 4, 1938, or on April 4, 1939. If it began on the latter date, then, clearly, it would have remained in force until after the death of the insured.

The answer to the question, we think, may be found in the terms of the written contract extending the time for payment of the premium. It was in the nature of an option, whereby the insured, in consideration of payment of part of the premium then past due, was given four months' additional time in which to pay the rest of it. The contract provided that "The within policy shall continue in force until the extended date without grace upon the following conditions," and one of the conditions was that, if the balance of the premium was not paid on or before that date, *"all rights under the policy shall be the same as if this agreement and deposit had not been made. . . ."* (Italics ours.) This language is unambiguous, and its meaning is clear. If the agreement had not been made, the "rights under the policy" would be that the insurance lapsed as of December 4, 1938, for failure to pay the semiannual premium then due, and extended insurance, under option (c), would commence to run on that date.

Respondent urges, however, adopting the language of her brief, that, "since appellant had actually commenced extended insurance from April 4, 1939,

and had in fact informed the beneficiary of that fact, it is estopped from pursuing any different method of calculating extended term insurance after the insured's death." The waiver, or estoppel, rule exemplified by *Reynolds v. Travelers Ins. Co.*, 176 Wash. 36, 28 P. (2d) 310, and recognized in *Reilly v. New York Life Ins. Co.*, 182 Wash. 460, 47 P. (2d) 840, cited by respondent, is not applicable here. As stated by Judge Tolman, the author of the opinion in the *Reilly* case, p. 465:

"The effect of the rule is that one may not mislead his adversary by assigning a false reason for terminating a contract and thereafter invoke another reason which might have been guarded against or obviated and avoided if it had been asserted at the proper time."

The letter to respondent's brother, set forth earlier in this opinion, was not written until after the insured had died and the rights of the beneficiary of his policy had been finally fixed and established. The appellant notified the insured many months before his death that the policy had lapsed and the extended insurance had terminated. The reason consistently advanced by the appellant for termination of the insurance contract was the failure of the insured to pay the balance of the premium due December 4, 1938. Appellant seems to have granted the insured extended insurance commencing at a later date than the extension contract warranted, it is true, but it does not appear that either the respondent beneficiary or the insured was in any way prejudicially misled by that, or that either of them was thereby induced to act, or refrain from acting, in such a way as to put them in a less advantageous position.

If we take appellant's computation of the cash value of the policy ($1,525) as of December 4, 1938,

deduct the loan indebtedness, with interest not compounded, and start the extended term insurance provided for in option (c) of the policy as of that date, such insurance would have expired prior to the death of the insured. Respondent maintains, however, that the insured was entitled to an amount, for the purchase of extended term insurance, $9.15 in excess of the sum arrived at under the foregoing method of computation; and that this larger amount would have been sufficient to keep such insurance in force until after the death of the insured.

Under the heading "BASIS OF COMPUTATION," the following provisions appear in the policy:

"The RESERVE for which funds are to be held upon this policy shall be computed upon the American Experience Table of Mortality with interest at 3% by the net level premium method.

"The values stated in the opposite Table are mathematical equivalents and each is equal to the full RESERVE at the end of the then current policy year, on the basis stated in the preceding paragraph, less a surrender charge of not more than 1½% of the face of this policy until the completion of the tenth policy year, at which time and thereafter there is no deduction made as a surrender charge, *except that fractions of a month and fractions of a dollar are not allowed.*" (Italics ours.)

The "opposite table" referred to in the foregoing quotation and set out in the policy, shows the loan and cash value "FOR EACH $1,000 OF FACE AMOUNT OF THIS POLICY" (Underscored matter ours) for each year it was in force. The discrepancy in the computations of reserve, or cash value, by appellant and respondent seems to be due primarily to this: The appellant has taken the figure representing the cash value as shown in the table (making the necessary allowance for the fractional part of a year), and, since it represents only

the value of each one thousand dollars of the policy, has multiplied such figure by ten to arrive at the full cash value; whereas, the respondent has computed the reserve for the full ten thousand dollar face amount of the policy in accordance with the American Experience Table of Mortality. Thus, according to respondent's computation, there is only the fraction of one dollar to be dropped, or disallowed; but, under appellant's method, following the policy table, there is one fraction of a dollar to disallow for each one thousand dollars of the face amount of the policy.

As stated in the annotation in 116 A. L. R. 793, the question whether a figure contained in a table of surrender values binds either the insurer or the holder of a policy, has been before the courts in but comparatively few cases, which have turned largely upon the peculiar circumstances of the individual case. The annotation indicates that, while there is some diversity of views, in the majority of the cases the table is regarded as controlling. In the instant case, we think that, by the language of the policy itself, the parties agreed to be bound by the table of values. The table is expressly based upon each one thousand dollars of the face amount "of this policy," and the policy specifically provides that, as to the values stated in the table, *fractions of a dollar are not allowed*. The language of the supreme court of South Carolina, in *Horton v. Atlantic Life Ins. Co.*, 187 S. C. 155, 160, 197 S. E. 512, 116 A. L. R. 788, is equally appropriate here:

"We have given much thought and consideration to this question, and have reached the conclusion, and so hold, that the table contained in the policy, in the absence of any showing of mistake or fraud, must control. The interpretation by the insurer of the American Experience Table of Mortality, and its application in this case, is expressed in the policy itself."

It is our conclusion that the extended term insurance commenced to run on December 4, 1938, and that the cash value of the policy, as indicated by the table set out therein, was not sufficient to carry such insurance to the date of the death of the insured.

Respondent maintains, however, that appellant is estopped by its conduct to assert that the insurance has lapsed and terminated.

On March 21, 1939, the insured wrote to the cashier of the Spokane branch of the appellant to the effect that he wished to continue his insurance, but that it required all his available cash to carry on his orchard operation, and he was unable to pay the premium. "Am wondering," he further stated, "if by using all or any dividends or loan values, you would personally put up any cash that might further be necessary to carry this until Nov. 1st and take my note due at that time for same. Will appreciate your suggestions or help."

In answer to this letter, appellant, on March 22nd, wrote that a cash balance of approximately $135 would be necessary to complete a loan to pay the premium to December 4, 1939; and that, to reinstate the insurance, a declaration as to the health of the insured would be required.

At the time appellant's letter was written, the policy was still in force under the premium extension contract, and the appellant had no right to require a declaration as to health as a condition of reinstatement. This, respondent says, and the failure of the appellant correctly to inform the insured of the amount of the net cash value of his policy, estopped the appellant from asserting that the insurance had been terminated prior to the death of the insured.

One of the essential elements of estoppel, as to the one asserting it, is that he relied upon the estopping

conduct of his adversary, and was induced thereby to act in such a way as to change his position to his detriment. 19 Am. Jur. 643, § 42; *Knutzen v. Truck Ins. Exchange,* 199 Wash. 1, and cases therein cited on p. 9; 90 P. (2d) 282, 285.

■ There was evidence to the effect that the insured had been injured in an automobile accident in 1937, and was not in good health in March, 1939; but the record does not show that he placed any reliance upon appellant's statement that a health declaration should be furnished, or that he failed to keep the insurance in force because of such statement. Nor does it appear that the insured was otherwise induced to act, or to refrain from acting, to his detriment because of appellant's representations or conduct.

The insurance lapsed because the premiums were not paid, and the record affirmatively discloses that the only reason they were not paid was that the insured was short of funds. He so stated in his letter to the appellant on March 21, 1939, and he repeated the statement in a notation appended to a letter which appellant wrote him on April 20th, urging him to reinstate the insurance. The insured never applied for a policy loan to pay the premiums after December 4, 1938. To assume that he would have done so had he known that the net cash value of his policy was somewhat larger than appellant found it to be under its method of computing interest on policy loans, and that the insured would have been able and willing to advance the necessary additional money to meet the premiums, would be to resort to mere conjecture.

The judgment is reversed, and the cause remanded with direction to dismiss the action.

ROBINSON, C. J., BLAKE, and STEINERT, JJ., concur.