[Crim. No. 5625. Second Dist., Div. Two. Oct. 11, 1956.]

THE PEOPLE, Respondent, v. RAYMOND MAAS, Appellant.

Fred A. Schenk, Jr., for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appeal by defendant from a conviction of having feloniously burned grass, woods, brush-covered land and slashing which were not his property, and from the order denying his motion for a new trial. His application for probation having been denied, he was remanded to the custody of the sheriff pending his acceptance by the Youth Authority.

He bases his appeal on two propositions, to wit:

(1) Prejudicial error in the court's refusal to exclude the testimony of the witness Erhart as to appellant's confession prior to a demonstration of the corpus delicti; (2) prejudicial error in allowing expert witnesses to usurp the functions of the jury by allowing such witnesses to testify that in their opinions the fire in Toro Creek Canyon on November 4 was not of accidental origin.

### APPELLANT'S BEHAVIOR

Before considering the first assignment it is pertinent to observe defendant's contradictory situations resulting from his extrajudicial utterances and his testimony on the stand. Ten days after the fire he made a free and voluntary statement concerning his movements on the day of the fire to Mr. Henry Erhart and the deputy district attorney. He told them that on November 3 in the 15-cent store at Atascadero he purchased two candles, took them home and burned one to see how long it would endure; that on the morning of the fourth, about 8 o'clock, he drove his car to Toro Creek Canyon, placed one of his candles in the brush and grass, wrapped paper around it, 15 feet from the road, lighted it and returned home where he remained until 10 o'clock; he then visited his grandmother's home where he picked apples until 12 noon when he saw smoke rising at the place he had set the candle.

Appellant accompanied Mr. Erhart, Mr. Dresser, a ranger, and Deputy Sheriff Miller to Atascadero in quest of the variety of candle he had used in Toro Creek Canyon to start the fire. He pointed to orange-colored candles, 18 inches long, two in a box. They returned to his grandmother's place and walked toward the locale of the fire. He finally designated the scene of his crime and told the officers he had set fire to the grass with the candle because he was mad at his uncle. He said the fire was on Baldwin's land.

Appellant conferred with Deputy Probation Officer Woods prior to the opening of the trial. At Woods' request, the boy told the officer that he left his work, drove to the canyon, set the candles in the bush, returned to his grandmother's and picked apples until he saw the smoke; that he then vainly attempted to communicate with the fire station at Santa Margarita; that he jumped on one of the trucks and went to the fire and fought it. He described to Woods how he took a piece of newspaper, punched a hole through it, poked it down in a bush on Baldwin's land so that, as the candle burned down, it would ignite the paper; that he did it to get even with Baldwin who had made him promises but never did "come across with them."

Appellant had been a companion of Francis Tillman as fire fighter in the State Forestry Service at Santa Margarita Station. On four or five occasions during their joint operations, appellant told Tillman that he liked to start fires; liked to see them burn and make the job last longer; that he said a candle might be used to start a fire so that one might have four hours to get out. All such conversations preceded November 4, 1955, but the witness thought he "was just kidding."

### CORPUS DELICTI WAS PROVED

Such confessions or admissions and statements were resisted when offered by the prosecution on the ground that the corpus delicti had not been established. A review of the circumstances of the fire discloses that a crime was committed in Toro Canyon on November 4, 1955, and that the conduct of appellant and his admissions connect him with that crime.

While it is true that appellant at his trial denounced his admissions made to the officials and to Tillman, and explained that he had admitted his guilt because he was getting homesick and could not get in touch with anybody, yet, the conflicts in his admissions and his testimony are not material

in view of the fact that the sufficiency of the evidence to support the judgment is not an issue.

In the absence of direct testimony to prove that a crime was committed on November 4, 1955 in Toro Canyon, it is necessary to detail the movements of appellant on the day of the fire as well as the facts relating to the climatic and atmospheric conditions obtaining in the vicinity of Toro Canyon November 4, 1955.

### MUTE EVIDENCES

Appellant resided with his parents in Toro Canyon. Their home was upstream from that of Mrs. Baldwin (mother of Mrs. Maas) who lived with her son Richard, and below them was the Manuel Roza ranch home. November 3d and 4th were appellant's days off from his place of employment by State Division of Forestry at the Santa Margarita fire-fighting station.

Noel Dodd who worked for the Standard Oil Company went to Toro Canyon at 5:30 a. m. on November 4 to check pressure on the oil line. He remained at one place about 20 feet from the road until noon. He saw no automobiles enter the area but he believed Mrs. Maas' car left it.

Manuel Roza had two dogs that always barked at strange cars on the adjacent roadway, but there was no such incident on the morning of the 4th. About noon Manuel noticed the smoke from the burning area. He rode a horse to the fire, saw no one and returned home. At the same time, Jack Batson, a fire fighter with the Federal Forest Service, was notified that there was a fire. He arrived at the scene at 12:45 p. m. on the northwest side of Toro Creek Road, found no one near but observed that about one hundred acres had burned. Robert Righetti of the Federal Forest Service arrived at Toro Creek at 1 p. m. On his way he saw appellant at his grandmother's ranch about a quarter of a mile from the fire, standing by a blue automobile. Righetti parked his conveyance near the truck which had been driven to the scene by Jack Batson and drove the truck down the canyon in search of a bulldozer to operate on the ridge tops. He observed fresh tire tracks on the road made by a common, commercial tire unlike the tires used by the Forest Service cars. In driving down the canyon to Roza's place, Righetti found the two gates closed and he observed that the 3-mile area south of the fire was rugged, steep and covered with luxuriant brush through which people do not ordinarily travel.

When Mr. Dalen, assistant for the United States Forest Service, arrived at the fire about 1 p. m., he concluded that the fire had originated in the flat area adjacent to the Toro Creek Road.

 The facts that Mr. Dodd saw the Maas car leave the premises, that both Mr. and Mrs. Maas testified they had not gone down the canyon past the Baldwin ranch that morning, and Mr. Dresser opined that only one car had been present before Mr. Batson arrived at 1 p. m. are persuasive evidence of appellant's having preceded the fire fighters to the area of the vicinity of the fire which was rough, rocky and inaccessible.

Appellant knew the territory intimately. He saw smoke rising from the Toro Canyon about noon. He telephoned his mother on the Baldwin-Maas local wire, went some distance for a telephone to call his father, then tried to call Santa Margarita Station (which had closed for the season), then made his way to the fire where he spent the rest of the day fighting the blaze. But on the 14th of November he confessed to the witness Erhart that he had started the fire.

### ATMOSPHERIC AND TOPOGRAPHICAL EVIDENCE

That a fire could not have been started from a cigarette stump, a cinder from an exhaust or from sunlight through a glass is a reasonable conclusion from the facts given in evidence. It was established that the temperature in the canyon was 74 degrees and the humidity was 33. No lightning had occurred that day or during the two days preceding; the fire danger index of the San Luis Obispo area on November 4, 1955, was 15 which means that a fire could *not* have started easily. Competent witnesses who were there about 1:30 p. m. testified that the fire had not resulted from accidental means but had been caused by human agency. It was proved that in a rough, isolated area, with climatic conditions as they were, it would have been extremely difficult for a fire to start in the grasses and brush from any ordinary, accidental cause. Searches were vainly made at the fire's origin for burnt matches, cigarette stumps and glass.

It was the opinion of Maurice L. Davis, Forest Fire Dispatcher for the California Division of Forestry, that the temperature and humidity of the Toro Creek are basically the same as that of the city of San Luis Obispo Fire Station during November. Records are kept by the United States Forest Service at San Luis Obispo for the purpose of de-

termining a fire danger index. They are used to ascertain existing conditions. The index is based upon the wind, its temperature and the humidity content of the fuel. The index rating is made out every day of the fire season, and that included November 4. The fire danger index for Toro Creek was 14 on November 3, 1955, which was a medium fire danger. On November 4, the fire danger index was 15, under which condition a fire does not start easily from accidental means. While the temperature and humidity at Toro Creek were not taken on November 4, Mr. William T. Dresser, Chief Ranger, was there. He testified that at 1:30 p. m. he observed the general weather conditions and was of the opinion that the fire had not resulted from accidental means but had its origin with human agency; that it was in an isolated area, not generally used, was topographically inaccessible and the humidity was relatively high, which rendered it difficult for a cigarette stump or a spark to ignite the living or dead grass or thicket. Nolan O'Neal, a university graduate who had worked for the Forest Service of California for twenty years, was familiar with Toro Creek Canyon, and testified that with a humidity of 33 and a temperature of 74 a lighted cigarette stub would not have ignited the grasses and light brush; that they would have absorbed enough moisture to require an open flame to start a fire.

## ADMISSION OF CONFESSION NOT ERROR

. Appellant vainly insists that it was prejudicial error to admit evidence of his confession prior to the receipt of proof of the corpus delicti. The answer to such contention is that the record abounds in competent proof of a burning of the grasses and thickets in Toro Canyon on November 4, 1955, by a human agency. Since it could not have resulted from accident, it necessarily was the fruitage of purpose and appellant came forth to say that he was the author of the holocaust at the designated time and place.

█ It requires but slight evidence of the corpus delicti to warrant the introduction of a confession and it need not connect the accused with the crime. (*People* v. *Day,* 71 Cal. App.2d 1, 3 [161 P.2d 803] ; *People* v. *Fierro,* 58 Cal.App.2d 215, 220 [136 P.2d 94] ; *People* v. *Seymour,* 54 Cal.App.2d 266, 275 [128 P.2d 726] ; *People* v. *Hubbell,* 54 Cal.App.2d 49, 57 [128 P.2d 579].) █ It is necessary only that the facts reasonably show that fire was of incendiary origin. (*People* v. *Hays,* 101 Cal.App.2d 305, 311 [225 P.2d 600].)

Such crimes are usually established by circumstantial evidence. (*People* v. *Hays, supra*; *People* v. *Sherman,* 97 Cal. App.2d 245, 249 [217 P.2d 715].) ▉ Also, neither the identity of the author of the crime is an essential of the corpus delicti (*People* v. *Chan Chaun,* 41 Cal.App.2d 586, 589 [107 P.2d 455]) nor is the method by which the fire was started. (*People* v. *Hays, supra.*)

▉▉ In view of the proof that no lightning had struck in the canyon for three days, that the atmospheric conditions there rendered accidental ignition of the grass by a spark, a cast-off match or stub utterly improbable, that the fire started in an isolated, rough area, it would be unreasonable not to find that the fire had its genesis in the mind and from the hand of a purposeful human being. Moreover, the testimony of Mr. Maas that he left home at 7 a. m. by the upper road out of the Toro Canyon, of Mrs. Maas that she had not gone past the Baldwin place the morning of the fire, of Richard Baldwin that he left Toro Canyon at 6:45 a. m., of Mr. Roza who lived nearest to the site of the initial fire and testified that he was in his home painting and that his alert dogs did not bark prior to noon, of the Standard Oil employee who testified that he went to work at 5:30 a. m. at a point within 20 feet of the road and continued there until noon without seeing any car come into the area—only the Maas car go out, the stage is set and all the props are in order to view the advent of the villain. Proof of his identity by circumstantial evidence is unnecessary. He marches to the center of the stage and announces that he is Raymond Maas; that he started the fire in Toro Canyon, that he was resentful toward his uncle and by his arson had evened the grudge. The confession was properly admitted and it completed the circle of proof and warranted the judgment of conviction.

▉ Appellant insists that the testimony of the experts to the effect that the fire was of incendiary origin invaded the province of the jury and was error because it was concerning a matter upon which persons of common understanding could have formed an intelligent judgment. In *George* v. *Bekins Van & Storage Co.,* 33 Cal.2d 834, 843 [205 P.2d 1037], it was held that the "possible causes of warehouse fires are sufficiently beyond the common experience of the ordinary judge or juror to justify the admission of expert testimony on that issue." It is not likely that a juror has had sufficient experience to gauge the probabilities of natural combustion

solely by reason of information relative to the material burnt, the temperature and humidity of the area and to its topographical features.

The judgment and the order denying the motion for a new trial are affirmed.

Fox, J., and Ashburn, J., concurred.