[Civ. No. 21994. Second Dist., Div. Two. Feb. 26, 1957.]

BEATRIZ T. RODELA, Appellant, v. SOUTHERN CALI-
FORNIA EDISON COMPANY, Respondent.

Joseph W. Fairfield, H. Gregory Brilliant and Ethelyn F. Black for Appellant.

Chase, Rotchford, Downen & Drukker and Richard T. Drukker for Respondent.

ASHBURN, J.—Personal injury action. Jury waived. Judgment for defendant. Plaintiff appeals, claiming primarily that she is entitled to the benefit of res ipsa loquitur and as a matter of law the evidence is insufficient to offset it.

Plaintiff was working for Academy Candle Company, which uses as a part of its equipment in making candles a boiler fired by 48 gas burners and producing heat of 400 to 600 degrees at the exit of the vent pipe. Normally this pipe extended in a vertical position on the west side of the building. It was only 18 inches from a power line pole of defendant Edison Company. On May 27, 1954, at about 5 p. m. this pole burned about two-thirds of the way through, at an elevation at which the end of the vent pipe would strike the pole if it fell over onto it; the pole with its cross arms, transformers and power lines, came crashing through the top of the building where plaintiff was at work and seriously injured her.

Although respondent denies the applicability of res ipsa loquitur, its counsel join appellant in arguing the case as one in which a res ipsa inference arises. It will appear as the discussion proceeds that plaintiff's appeal is built upon a faulty conception of that doctrine.

In stating the facts we accept, in conformity with the familiar rule of review, all evidence and all inferences favorable to respondent which the record warrants. The Candle Company's building faced north on 48th Street in the city of Vernon. On the west side was an alley some 4 feet 3 inches

wide. A stack or vent pipe passed through the west wall of the building upon a horizontal plane and through an elbow turned to a vertical position. When so standing it was about 22 inches from the west wall and extended some 2 to 3 feet above the eaves. The pipe had a hood or cap on it which had two exits for the fumes and when in normal position discharged them to the north and the south. In that alley was a power line pole of defendant Southern California Edison Company, 12 inches in diameter, which was 18 inches south of the center of the vent pipe and 21 to 23 inches west of the wall of the Candle Company's building. The pole was 50 feet high and carried three heavy transformers and nine high tension wires. The cross arms and all electrical equipment were 27 feet above the burned portion of the pole and the break therein which occurred when it fell on the building. Witnesses who arrived within 10 to 15 minutes after the crash saw the broken ends of the pole burning or smoldering. The pole, which was heavily treated with creosote, had burned about two-thirds of the way through and the remaining portion had broken off. The broken ends were charred and black. The transformers, cross arms and wires had fallen into or upon the building.

Attention of persons in and near the building was first attracted by a noise variously described as a loud explosion like a bomb or a cannon boom or a mortar shell. This so-called explosion coupled with the fall of the pole is the heart of plaintiff's case. From this springboard counsel jumps to the conclusion that as this gives rise to the inference of res ipsa loquitur it became the duty of defendant to disprove the possibility that an explosion or a short circuit or a blown fuse occurred within a transformer and thus caused the fire and resultant accident. In the reply brief it is said: "A defective fuse might cause a short circuit which in turn might cause the explosion." Also: "All that the appellant did was demonstrate through evidence produced by the defendant's own witnesses that a cause of the explosion could have been a defective fuse causing a short circuit. . . . The point that appellant is making, is that the respondent did not eliminate or explain a defective fuse as a cause for the explosion; that the respondent did not demonstrate due care on its part in keeping proper fuses in the fuse box. . . . You must eliminate all possible causes for the accident."

In support of this position language such as that quoted in *Dierman* v. *Providence Hospital,* 31 Cal.2d 290, 295 [188 P.2d 12], is invoked, namely, " 'that where the accident is of

such a character that it speaks for itself, as it did in this case, . . . the defendant will not be held blameless except upon a showing either (1) of a satisfactory explanation of the accident, that is, an affirmative showing of a definite cause for the accident, in which cause no element of negligence on the part of the defendant inheres, or (2) of such care in all possible respects as necessarily to lead to the conclusion that the accident could not have happened from want of care, but must have been due to some unpreventable cause, although the exact cause is unknown. In the latter case, inasmuch as the process of reasoning is one of exclusion, the care shown must be satisfactory in the sense that it covers all causes which due care on the part of the defendant might have prevented.' '' Appellant emphasizes the last sentence and argues that every possibility of negligence on defendant's part must be negated by its proof. This overlooks several things. Firstly, the court was discussing the sufficiency of the evidence to overcome the inference as a matter of law, while the question at bar is the sufficiency of the evidence to support a finding of fact contrary to the res ipsa inference. Immediately preceding the language quoted from Dierman occurs this: ''It is not to say that a defendant must in every such case produce evidence of the actual cause of the accident. It is not to say that the question of the sufficiency of a defendant's explanation—or, if he cannot explain, the sufficiency of his evidence of due care and of impossibility of explanation—is not ordinarily for the jury.'' (P. 295.) Moreover, the matter emphasized by counsel is concerned with a situation in which there is no satisfactory explanation of the accident and that is not the case at bar, as will be seen. Again, the rules stated in the quotations from Dierman are applicable only to respects in which the evidence shows a probability of negligence on the part of defendant. This later clarification of the doctrine appeared in *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 446 [247 P.2d 344]. It is there said: ''In summary, it appears from the foregoing that, as a general rule, res ipsa loquitur applies where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. In determining whether such probabilities exist with regard to a particular occurrence, the courts have relied both upon common knowledge and the testimony of expert witnesses. . . . All of these matters have been

treated as aids to help the courts in determining whether the accident was of such a nature that the injury was more probably than not the result of the defendant's negligence.''

■ As pointed out in *Nelson* v. *Douglas Pedlow, Inc.,* 130 Cal.App.2d 780, 784 [279 P.2d 823] : ''The res ipsa loquitur doctrine is not intended to open the door for mere speculation as to the cause of an injury. Rather, it furnishes a formula which in a proper case, may justifiably lead to a natural inference of negligence on the part of one who is in actual control of the particular situation.'' Defendant's explanation, while it must be as broad as the inference of negligence (*Talbert* v. *Ostergaard,* 129 Cal.App.2d 222, 228 [276 P.2d 880]), need be no broader. (*Hinds* v. *Wheadon,* 67 Cal.App. 2d 456, 464-466 [154 P.2d 720].) It need not reach out to the field of negation of possibilities of negligence on defendant's part as distinguished from probabilities.

The fire and resulting break in the pole were 27 feet below the nearest electrical apparatus or wires; there were no grounded wires, which would be essential to starting an electrical fire at that place on the pole; no markings or other evidence of fire at the top of the pole; and there was affirmative evidence that no transformer exploded or blew out or short circuited, and that no cross arm was burned. Counsel's emphasis upon the initial ''explosion'' as evidence of electrical trouble is adequately offset by testimony that the wires as they came down would fall together creating a short circuit, which means a flash or arc and a loud noise like an explosion. Some of plaintiff's witnesses saw such a flash of light followed by the noise.

■ The mere possibility that any of the suggested electrical troubles occurred is not enough to raise an inference of negligence on defendant's part, for '' [a] bare possibility is not evidence [citations] ; it cannot be accepted as 'evidence to the contrary' of the presumption. 'An inference cannot be based on mere possibilities; it has been held that it must be based on probabilities.' '' (*Robinson* v. *Board of Retirement,* 140 Cal.App.2d 115, 118 [294 P.2d 724].) ''The most recent decisions of the Supreme Court prescribe as the ultimate test of applicability of res ipsa loquitur an answer to the question of 'whether it can be said, in the light of common experience, that the accident was more likely than not the result of their [defendants'] negligence. [Citing cases.] ''Where no such balance of probabilities in favor of negligence can be found, res ipsa loquitur does not apply.'' ' ''

(*Redfoot* v. *J. T. Jenkins Co.*, 138 Cal.App.2d 108, 116 [291 P.2d 134].) To the same effect see, *LaPorte* v. *Houston,* 33 Cal.2d 167, 169 [199 P.2d 665]; *Zentz* v. *Coca Cola Bottling Co., supra,* 39 Cal.2d 436, 446; *Simmons* v. *Rhodes & Jamieson, Ltd.,* 46 Cal.2d 190, 195 [293 P.2d 26].

Opposed to the possibilities upon which appellant relies is the opinion of Captain Halter (formerly of the Los Angeles Police Department), a qualified expert, that this was not an electrical fire but "that the pole was set afire by continuing application of heat." ▪ It is now settled in this jurisdiction that an expert may express an opinion upon the ultimate issue of the case. (*People* v. *Martinez,* 38 Cal.2d 556, 564 [241 P.2d 224]; *George* v. *Bekins Van & Storage Co.,* 33 Cal.2d 834, 843-844 [205 P.2d 1037]; *People* v. *Cole,* 47 Cal.2d 99, 105 [301 P.2d 854]; *People* v. *Maas,* 145 Cal. App.2d 69, 75-76 [301 P.2d 894].) In the George case this holding was made with respect to the cause of a fire, the cause being reached by the expert through a process of elimination, as in the instant case.

From the foregoing it is apparent that this was not in truth a res ipsa case, but one in which the best that can be said for appellant is that the trier of facts had the function of determining whether an inference of res ipsa loquitur did arise. *Seneris* v. *Haas,* 45 Cal.2d 811 [291 P.2d 915], a jury case, says: "The conclusion that negligence is the most likely explanation of the accident, or injury, is not for the trial court to draw, or to refuse to draw so long as plaintiff has produced sufficient evidence to permit the jury to draw the inference of negligence even though the court itself would not draw that inference; the court must still leave the question to the jury where reasonable men may differ as to the balance of probabilities (*Res Ipsa Loquitur in California,* Prosser, 37 Cal.L.Rev. 183, 194-195). . . . The existence of the conditions upon which the operation of the doctrine is to be predicated is a question of fact and the right of the jury to find those facts must be carefully preserved." (P. 827.)

▪ Reverting to the assumption that this is a res ipsa case as a matter of law, the evidence fully sustains the trial judge's holding that there was no negligence on the part of defendant. The fire occurred at the place on the pole where the hood of the vent pipe would have discharged its heat had it fallen over against the pole. While no one saw it in that position the fact was established by circumstantial evidence. Of course that is equally as potent by way of

overthrowing the res ipsa inference as is any other type of credible evidence. (See *Polioudakis* v. *City & County of San Francisco*, 129 Cal.App.2d 137, 142 [276 P.2d 126].) █ One who relies on circumstantial evidence is not required to exclude all other possibilities. "It is not necessary, in order to establish a theory by circumstantial evidence, that the facts be such and so related to each other that such theory is the *only* conclusion that can fairly or reasonably be drawn therefrom, because it is now settled law that 'circumstantial evidence in civil cases, in order to be sufficient to sustain the verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than that arrived at by the jury.'" (*Katenkamp* v. *Union Realty Co.*, 36 Cal. App.2d 602, 617 [98 P.2d 239].) To the same effect are *Hilyar* v. *Union Ice Co.*, 45 Cal.2d 30, 38 [286 P.2d 21]; *Singer* v. *Marx*, 144 Cal.App.2d 637, 644 [301 P.2d 440]; *Spolter* v. *Four-Wheel Brake Serv. Co.*, 99 Cal.App.2d 690, 694 [222 P.2d 307].

The evidence shows that there were no guy wires from the roof holding the top of the stack in place; that the vent emitted heat ranging in temperature from 400 to 600 degrees Fahrenheit; that later borings in the pole disclosed no evidence of decay, annual ring separations or other type of deterioration; that application of heat of 450 to 500 degrees Fahrenheit for several hours would be sufficient to char and burn the creosoted pole; that not only the pole but also the inside of the vent hood bore evidence that this had happened; that the burn was in that portion of the pole nearest the vent stack and at the height at which the hood would strike when falling on it; that the pole fell toward the building; that there was no evidence on the roof, in the building or on the ground that any other type of fire had occurred.

Sergeant Hatcher of the sheriff's arson squad was called as an expert witness by defendant; he qualified (as was asserted later by plaintiff's attorney) and testified: "Q. If you tilted the stack over against the pole, where would it strike? A. It would be about the top of the burn, on the top portion of the pole in the pole yard. Q. Did you find anything else to have caused this fire other than this stack? . . . A. I did not." The witness was turned over to opposing counsel for cross-examination at this point, and facts and opinions were brought out on that examination which of themselves are enough to support the judge's findings. Parenthetically, it should be noted that this leaves appellant in

no position to urge lack of expert qualifications or that the testimony is hearsay or opinion based upon insufficient facts or given in response to improper questions. Sgt. Hatcher testified on cross: "Q. Did you find the stack was the cause of the fire? A. I did find the stack as the cause of the fire. Q. How did you find the stack as the cause of the fire? A. Because it was the continued application of heat from out of the stack as it rested against the pole that caused the pole to burn. Q. Now, how did you come to that conclusion? A. As a result of the examination of the area at the time, the distances, the amounts, the examination of the end of the piece which ran from the top of the elbow to the top which has the curved vent on it, and the fact that the curved vent has a slight discoloration on the inside similar to the discoloration from the burning of wood, that the distances were the same, and the fact that the two guy wires which were attached to the portions of the pipe at the time of the examination were not at any place put into the wood." He also gave considerable other evidence to the same effect. Substantially the same opinion was voiced by Captain Halter and by Percy E. Parker, district superintendent of defendant, who also qualified as an expert. Their evidence is not mere speculation, as urged by appellant. The only element of speculation involved therein is the normal amount which occurs as a part of the reasoning process applied to circumstantial evidence. (See *Edler* v. *Sepulveda Park Apts.*, 141 Cal.App.2d 675, 679 [297 P.2d 508]; *Miller* v. *Southern Pac. Co.*, 117 Cal.App.2d 492, 507 [256 P.2d 603]; *Schulz* v. *Pennsylvania R. Co.*, 350 U.S. 523, 526 [76 S.Ct. 608, 100 L.Ed. 668].)

Appellant says in her opening brief: "The sole question for the Appellate Court is the legal sufficiency of the evidence introduced by the defendant to meet or balance the inference of negligence established by the *res ipsa loquiter* [sic] doctrine." However, counsel does argue, by way of support for the res ipsa inference, that defendant was negligent in failing to perform the duty of foreseeing such an accident, a doctrine which is thus stated in *Tucker* v. *Lombardo*, 47 Cal.2d 457, 464-465 [303 P.2d 1041]: "It is an elementary principle that negligence is gauged by the ability to anticipate danger. '[R]easonable foresight of harm is essential to the concept of negligence, and supplies the criterion for determining whether it exists in a particular case, and reasonable foreseeability of harm is the fundamental basis of the law of negligence. . . . On the other hand, one is not bound to

foresee every possible injury which might occur, or every possible eventuality, but only those which were reasonably foreseeable; and one is not required to anticipate against dangers which it is not his duty to avoid.' (65 C.J.S. § 5c (2) (a), pp. 354-359.)'' Again the record fails to support the argument.

 It appears that defendant caused the pole to be inspected periodically, but the nature or frequency thereof is not shown. However, it is clear that the pole did not fall as a result of any inherent weakness, and the inference is plain that it would not have done so except for the intervention of outside agencies. The matter of inspections therefore becomes legally inconsequential. Defendant was entitled to assume that others would exercise reasonable care in the management of their own property and could properly continue to do so until apprised in some manner that such reliance was no longer reasonably safe. (*Bogner* v. *Eubanks*, 137 Cal.App. 2d 181, 184 [289 P.2d 875]; *Harris* v. *Johnson*, 174 Cal. 55, 58 [161 P. 1155, Ann.Cas. 1918E 560, L.R.A. 1917C 477]; *Shivers* v. *Van Loben Sels*, 109 Cal.App.2d 286, 289 [240 P.2d 635].) There is nothing in this record to support an inference that defendant was or should have been alerted to the possibility that the placing of a new roof on the Candle Company building would result in leaving the vent stack without support of proper guy wires, or alerted to any other facts which would forecast an accident similar to the one which occurred, or any other accident involving its power pole (*cf. Werkman* v. *Howard Zink Corp.*, 97 Cal.App.2d 418, 425 [218 P.2d 43]).

Certain procedural matters advanced by appellant require no discussion. None of the alleged errors resulted in any prejudice.

Judgment affirmed.

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied March 21, 1957, and appellant's petition for a hearing by the Supreme Court was denied April 25, 1957. Carter, J., was of the opinion that the petition should be granted.