[Civ. No. 25199. Second Dist., Div. Two. Feb. 16, 1962.]

ADA L. SCOTT, as Executrix, etc., Plaintiff and Respondent, v. FEDERAL LIFE INSURANCE COMPANY, Defendant and Appellant.

Betts, Ely & Loomis and Ingall W. Bull, Jr., for Defendant and Appellant.

D. Wendell Reid and W. Eugene Henry for Plaintiff and Respondent.

HERNDON, J.—This action is brought to recover on a policy of life insurance. The cause was tried by the court without a jury and judgment entered in favor of plaintiff-respondent, the named beneficiary.

The policy contains the usual forfeiture clause. The defense was that the policy had been forfeited prior to the death of the insured for nonpayment of premiums. The court found waiver and estoppel on the part of defendant-appellant, the

insurer, by its conduct in dealings with the insured and allowed recovery on that theory. On appeal, it asserts the evidence does not establish either waiver or estoppel.

The facts appear practically undisputed. On July 23, 1954, the insured, then 64 years of age, made written application for a policy in the amount of $7,000 at the standard rate for the policy at his age, $584.50, payable annually. The application contained this statement: ''I authorize the Company to charge any unpaid premium as a loan against the policy according to its 'Premium Loan' provision, unless otherwise requested by me in writing prior to the due date of such premium.''

Appellant issued the policy for an annual premium of $920.64, adjusting it upwards at the extra rate of $48.02 per thousand because of medical reports indicating impairment of insured's physical condition, and deleting a standard provision in the policy for extended term insurance at the option of the insured in the event of default. Dated August 9, 1954, it was delivered on August 23, 1954, with a copy of the application attached thereto. An annotation had been made on the application under the heading ''Home Office Corrections or Additions'' as follows: ''Extra premium of $48.02 per M per annum. Without extended insurance values Annual premium is $920.64.''

The policy in the face amount of $7,000 by its terms is payable on proof of the insured's death, or as an endowment at the end of the policy year nearest age 85 of the insured. It calls for the first premium payment on delivery of the policy and subsequent premium payments on August 9 of each year. The policy provides a grace period of one month of not less than 30 days and if death occurs during the grace period, any unpaid premium is deductible from the amount payable.

Other pertinent provisions are as follows:

''*Premium Loan* If any premium hereon shall not be paid when due or within the period of grace, prior written request therefor having been made by the Insured, the Company will charge the same against the policy as a loan with interest at five per cent per annum, payable in advance, provided the loan value specified on the fifth page herein be sufficient to cover such loan with interest in addition to the existing indebtedness and accrued interest; otherwise the Company will apply the available loan value to pay the premium and interest for a proportionate period, and at any time while this policy is thus sustained in force the payment of premiums may be

resumed without medical examination. If interest is not paid when due it shall be added to the existing loan and bear interest at the same rate. The word 'premium' as used in this clause comprehends the entire premium under the policy, including the premium for any supplement covering additional accidental death benefits and/or waiver of premium disability benefits.''

"*Payment of Premiums* All premiums are due and payable at the Home Office of the Company in the City of Chicago or to a duly authorized agent of the Company, on or before the due dates, but only on the production of the Company's receipt therefor, signed by its Secretary or Assistant Secretary and countersigned by the authorized agent to whom the payment is made. Although this contract is based on the receipt of premiums annually in advance, the premiums may be paid in semiannual or quarterly installments, in advance, and under certain conditions in monthly installments, in advance, the amount of which will be named by the Company on application. Change in the mode of premium payment may be made on any anniversary of the date of issue of this policy. Except as herein provided, the payment of any premium or installment thereof shall not maintain this policy in force beyond the date when the next premium or installment is payable. If any premium or part of a premium shall not be paid when due or within the period of grace, this policy shall become void, except as otherwise herein provided, without notice to any person interested.''

"*Reinstatement* At any time after any default, this policy will be reinstated upon written application therefor, subject to evidence of insurability of the Insured satisfactory to the Company and also subject to any indebtedness existing against the policy at the date of default, with interest thereon and the payment of past due premiums with interest thereon at five per cent per annum.''

A table setting forth the factors to be employed in determining cash or loan values of the policy at a given age at the end of each policy year is contained in the policy. No explanation of how the computation is to be made appears therein.

The policy was assigned as additional collateral for a mortgage loan made to the insured by a savings and loan association. The association paid the annual premiums on August 31, 1954, and August 23, 1955. The assignment was released on November 16, 1955, and monthly premiums were accepted

beginning with the premium due August 9, 1956. The following table chronicles the history of subsequent payments:

| Premium Due | Date Paid | Premium Paid | Paid by |
|---|---|---|---|
| Aug. 9, 1956 | Sept. 13, 1956 | $ 80.64 | Insured |
| Sept. 9, Oct. 9, and Nov. 9, 1956 | Nov. 14, 1956 | 241.92 | ,, |
| Dec. 9, 1956 | Feb. 8, 1957 | 80.64 | ,, |
| Jan. 9, 1957 | Mar. 19, 1957 | 80.64 | ,, |
| Feb. 9, 1957 | Apr. 10, 1957 | 80.64 | ,, |
| Mar. 9, 1957 | May 28, 1957 | 80.64 | ,, |
| Apr. 8, May 9, June 9, and July 9, 1957 | July 28, 1957 | 322.35 | Loan |
| Aug. 9, 1957 | Aug. 5, 1957 | 80.64 | Insured |
| Sept. 9, Oct. 9 Nov. 9 and Dec. 9, 1957 | Nov. 23, 1957 | 322.35 | Loan |
| Jan. 9, 1958 | Jan. 21, 1958 | 80.64 | Insured |
| Feb. 9, 1958 | May 20, 1958 | 80.64 | Loan |

At the time payments were made by loans on the policy the cash or loan values of the policy were equal to or in excess of the amounts of the loans. It was the practice of appellant to send out a "premium due" notice 20 days in advance of the date a premium was due. If a premium which was due prior to the time a notice ordinarily was sent out had not been received, the regular notice would not be sent until receipt of the earlier premium. Premium notices were sent to the insured on or about:

| Date Notice Sent | Date Premium Due |
|---|---|
| September 13, 1956 | September 9, 1956 |
| November 14, 1956 | December 9, 1956 |
| February 8, 1957 | January 9, 1957 |
| March 19, 1957 | February 9, 1957 |
| April 10, 1957 | March 9, 1957 |
| May 28, 1957 | April 9, 1957 |

Premiums due April 9, May 9 and June 9, 1957, were delinquent. On June 18, 1957, appellant sent insured a notice printed on yellow paper similar to that of a telegram entitled "TELEPOST" advising him these premiums had not been paid and requesting payment. No reply or payment was received. On July 5, 1957, appellant sent insured a letter advising him a loan of $327.81 representing four monthly premium payments, plus interest on the loan to and including August 9, 1957, had been completed in accordance with the policy provi-

sions. The loan was entered on appellant's books on July 10, 1957. Thereafter, notice of premium due on August 9, 1957, was sent and subsequent payment entered August 5, 1957.

A similar telepost was sent by appellant to the insured on October 29, 1957, when premiums due on September 9, and October 9, 1957, were delinquent. A similar letter was sent on November 23, 1957, giving notice of amalgamation of the prior loan and a new loan covering the four monthly premiums due September 9, October 9, November 9 and December 9, 1957. This notice also contained the typed message: "This transaction uses up the entire loan value of your policy, therefore, if the premium due January 9, 1958, is not paid before that date, or during the grace period, the policy will lapse." Thereafter, notice of premium due January 9 was sent and subsequent payment entered on January 21, 1958. Notice of premium due February 9, 1958, was then sent.

On March 28, 1958, when the premium due February 9, 1958, remained unpaid, appellant sent insured a telepost letter urging payment of premiums due in the amount of $166.94 (a total of two monthly premiums plus interest on loan) and requesting that the insured complete an application for reinstatement on the reverse side which called for answers as to whether he had consulted a physician for illness or injury since the date of application for the policy, their names and addresses, and whether he had any ailment, disease or disorder. Insured had suffered an automobile accident in October 1957, and sustained injuries which impaired his health and for which he was treated by many physicians. He would have had to answer these questions affirmatively. The application also required his signature to the following statement: "I further agree that the reinstatement of this policy (ies) shall in no event become effective unless and until this application is approved at the home office of the company in Chicago, Illinois, and the full amount due is paid during the lifetime and good health of the insured." No further communication to or from the insured appears.

In June 1958, it was determined by the actuarial department of appellant, and it is undisputed, that at the time the telepost was sent the loan value of the policy was sufficient to pay the premium due on February 9, 1958, and allowing for the grace period, the policy had not lapsed but was in effect until April 9, 1958. Decedent died on April 30, 1958.

The court found that: during the life of the policy all premiums were paid at irregular times, many of them long

after they fell due; under the terms of the policy and by the conduct of appellant in applying accumulated loan values to premium payments, it was impossible after the first two years of the life of the policy for the insured to determine the time at which any given premium would become delinquent; as a result of the conduct of appellant, the insured relied thereon and believed that strict compliance as to the time of payment of premiums had been waived and that the policy would remain in full force and effect until some notice was given and received requiring strict performance of the terms of the policy and payment of any premium due.

The court further found that: the telepost of March 28, 1958, contained incorrect information; the information therein was never corrected nor withdrawn prior to the death of insured on April 30, 1958; the insured was willing and able to pay any premium due or owing; the insured believed he could not provide answers to the questions in the application for reinstatement acceptable to appellant and it would not be approved; he believed he was not in a state of health entitling him to reinstatement if the policy was not then in force and application for reinstatement would be an idle act; he believed in and relied on the statements of appellant and so relying, did not remit the sum of $83.47 necessary to pay the premium [and interest due] from April 9, 1958, to May 9, 1958; insured was thereby misled to his prejudice and detriment.

The conclusions of the court were that appellant waived strict compliance with the provisions of the policy with respect to time and manner of payment of premiums and on the death of insured appellant was estopped to forfeit the policy or to deny liability thereunder.

The judgment awarded to respondent $6,123.55 ($7,000 less loans and premiums due), interest of $963.26 and costs of $23.10.

Appellant contends: (1) its course of conduct did not establish a waiver of the right to forfeiture of the policy because as long as there was loan value it never had the right to claim an earlier forfeiture when payments were delinquent; (2) its course of conduct did not afford a basis for estoppel inasmuch as the insured was fully informed the reason for acceptance of irregular payments was the existence of loan value to pay premiums in accordance with his written request in the application for insurance and the provisions of the policy and as he was notified on November 23, 1957, that the loan value was

exhausted, he could no longer rely on making irregular payments; (3) its notice of lapse to the insured on March 28, 1958, did not establish an estoppel because the insured did not rely on it.

An express provision of an insurance contract stipulating that a default in payment renders the policy void or causes it to lapse is valid, and a default in such payment ordinarily forfeits the policy where statutory provisions are not violated. (45 C.J.S., Insurance, § 614, p. 447.) Waiver and estoppel, however, are frequently applied in insurance law in favor of the insured or the beneficiary under a policy. The courts have generally applied the liberal rule in favor of the insured. (*Knarston* v. *Manhattan Life Ins. Co.*, 140 Cal. 57 [73 P. 740]; *Truck Ins. Exch.* v. *Industrial Acc. Com.*, 36 Cal.2d 646 [226 P.2d 583].) Like any other contracting party, an insurance company may waive provisions placed in a policy solely for its own benefit and may, by its conduct, be estopped from asserting defenses which might otherwise be available. (*J. Frank & Co.* v. *New Amsterdam Cas. Co.*, 175 Cal. 293, 295-296 [165 P. 927].)

To constitute a waiver there must be an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished. (51 Cal.Jur.2d, Waiver, § 3, pp. 307-308, and cases cited therein.) The party who has the right may waive it without reliance by another. The doctrine of estoppel, however, is based on the theory that the party estopped has by his declarations or conduct misled another to his prejudice so that it would be inequitable to allow the true facts to be used against the party misled.

"[T]he party relying upon the doctrine of equitable estoppel must prove the existence of the four required elements essential to its application: (1) that the party to be estopped must be apprised of the facts; (2) he must intend that his conduct will be acted upon, or act in such a manner that the party asserting the estoppel could reasonably believe that he intended his conduct to be acted upon; (3) the party asserting the estoppel must be ignorant of the true state of the facts; and (4) he must rely upon the conduct to his injury. [Citations.] Negligence that is careless and culpable conduct is, as a matter of law, equivalent to an intent to deceive and will satisfy the element of fraud necessary to an estoppel. [Citations.]" (*Crestline Mobile Homes Mfg.*

*Co.* v. *Pacific Finance Corp.,* 54 Cal.2d 773, 778-779 [8 Cal. Rptr. 448, 356 P.2d 192].)

 Whether a waiver has occurred is usually a question of fact the determination of which, if supported by substantial evidence, will not be disturbed on appeal (*Grantham* v. *State Farm etc. Ins. Co.,* 126 Cal.App.2d Supp. 855, 862 [272 P.2d 959, 48 A.L.R.2d 1088]; *Phillips* v. *Reserve Life Ins. Co.,* 128 Cal.App.2d 540, 547 [275 P.2d 554]), unless the only inference which can be drawn from the evidence is to the contrary. (*Huttlinger* v. *Far West Enterprises,* 131 Cal. App.2d 808, 811 [281 P.2d 554]; *O'Connell* v. *Weitzman,* 168 Cal.App.2d 400, 404 [36 P.2d 592].) The rule is the same for estoppel. (*Cardosa* v. *Fireman's Fund Ins. Co.,* 144 Cal.App. 2d 279, 282-283 [300 P.2d 875]; *Sawyer* v. *City of San Diego,* 138 Cal.App.2d 652, 662 [292 P.2d 233].)

 If from the evidence inferences could have been drawn which establish all of the elements of an estoppel on the part of appellant, the judgment must stand. In regard to the telepost of March 28, 1958, we conclude that estoppel was established. It is therefore unnecessary to consider whether waiver or estoppel was established from the conduct of appellant in accepting late or irregular premiums or in failing to send a notice of impending lapse. All four of the elements are present in and supported by the evidence of the circumstances surrounding the erroneous notice that the policy had lapsed.

Appellant was in a position to determine and should have known the exact period of time the policy was in full force and effect based on premiums paid by the insured or charged against the loan value of the policy.

Appellant's request for payment of two delinquent payments and application for reinstatement subject to its subsequent approval was conduct from which the insured could reasonably believe that appellant intended that he should act in accordance therewith and not simply mail payment for one premium. A reading of the correspondence leaves no doubt that appellant intended that the insured understand and act on the premise that the policy had lapsed.

It is apparent that the insured was ignorant of the true state of the facts. The information provided in the policy was insufficient from which to determine the exact amount of loan value established by monthly premiums. It is not contended that a policy holder in his position could determine the exact amount even if he had such full and complete information.

Even the appellant with full information and trained actuaries had made an erroneous computation.

Appellant's chief contention is that there is no substantial evidence that the insured relied on the erroneous information contained in the telepost of March 28, 1958. To establish that the insured relied on this information, it was necessary for the plaintiff to present to the trier of fact evidence that the insured failed to make premium payment because of the misrepresentation, and not because of other reasons. Where direct and positive evidence of a fact is not available, proof may be made by means of indirect evidence. The probative force of indirect evidence rests on inference, and in a case where the intent and belief of a deceased person is in issue, inference if often the necessary means of proof. While, of course, leaving some room for doubt, there was evidence of the conduct of the insured which reflected on his belief.

Plaintiff-respondent, who was the sister of the insured, testified that on March 19, 1958, he borrowed $75 from her "to pay his insurance." Her check to him was cashed and deposited in his bank account with an additional sum sufficient to pay the premium due. He told another witness he had borrowed the money to pay his insurance. A search of his papers revealed no other outstanding insurance policy. His bank statement, while indicating that he later checked out this deposit, showed a sufficient balance to make the premium payment prior to April 9, 1958, which was in fact the last day of grace on which payment could have been made to keep the policy in force. This was substantial evidence from which the trier of fact could properly draw the inference that the insured believed that the policy had not yet lapsed, and that he intended to keep it in force.

March 19, 1958, the date the insured borrowed the money, was a date midway between premium due dates. Belief on March 19 that the policy was still effective would necessarily include the belief that it would remain effective until the next premium due date on April 9, 1958. Therefore, the fact that he did not promptly pay the premium or that he used the borrowed money temporarily for other purposes does not tend to prove or disprove what his belief was in respect to the policy. Nor does the fact that he relied on the loan value to pay earlier premiums have probative value. For whatever reason, it merely indicated it was his practice to keep cash investment in the insurance at a minimum.

Appellant argues that if the insured relied on the erroneous information in the telepost of March 28, 1958, he would have returned the application for reinstatement. This appears to be mere speculation. The question is whether the telepost convinced the insured the policy had lapsed and he failed to make the premium payment because of it. Whether he would wish to reinstate the policy if it had lapsed is a different question.

The logic of appellant's further argument escapes us. While it may appear that it would be unreasonable for the insured to anticipate that the premium payment of January 9 would create sufficient loan value to pay the entire subsequent premium, it is nevertheless undisputed that the loan value was sufficient and did pay the entire subsequent premium. If the premise of appellant were correct that because of the earlier communication the only inference reasonably to be drawn from the evidence is that the insured already believed the policy had lapsed, then the further inference should be drawn that his belief, admittedly erroneous, was induced by the earlier communication, and his payment of the premium of January 9 was proof of his reliance on it. Therefore, in any event, the court could have found that appellant was estopped by its conduct to enforce the policy.

There was ample evidence to support and we are bound by the finding that the insured relied on the information which, owing to the mistake or negligence of the insurer, was erroneous. In effect, appellant's notice of lapse prevented the performance of the condition in the policy requiring payment of premium by the insured. To allow the insurer under these circumstances to deny liability and place the responsibility upon the insured would not only be manifestly unjust but would allow it to profit by its own error. It would open the door to great confusion, uncertainty and, in some cases, fraud. The forfeiture provision of the policy clearly cannot be given the effect of shielding the appellant from the consequences of its own misrepresentation.

In view of our holding, other bases urged by respondent for sustaining the judgment need not be considered.

The judgment is affirmed.

Fox, P. J., concurred.

ASHBURN, J.—I dissent. I discover here no basis for a

holding of waiver or estoppel on the part of the insurance company.

So far as concerns irregular and late payment of premiums, it appears that the application for the policy authorizes the company to charge any unpaid premium as a loan against the policy and the policy itself says that if any premium be not paid within the period of grace the company will charge same against the policy as a loan provided the loan value specified on the fifth page of the policy is sufficient to cover such loan. When the company charged any delinquent premium against loan value of the policy and thereby accepted a belated premium payment it was granting no indulgence to the insured, but was merely performing a legal obligation to accept that sort of payment. The basis for any estoppel was absent. When the loan value was exhausted the insured was notified of the fact and told that unless the January 9, 1958, payment was made the policy would lapse.

The "Telepost" sent by mail on March 28, 1958, by the company to insured and presumptively received on March 31, 1958, was a notice of lapsing only by inference. It stated the full amount due to be $166.94, including interest, when in fact, as later discovered, there was but one premium due, that of March 9, 1958, in the sum of $80.64. The body of the telepost was not a notice of lapse, but a plea for payment and avoidance of a lapse. True there was printed on the back of it an application for reinstatement, which referred to the policy as lapsed and called for health information which would have a direct bearing upon the matter of reinstatement. It looks like a document intended for future use after a lapse had occurred. But it probably should be treated for present purposes as a notice that the policy had lapsed. It could afford only one of the elements of an estoppel. The record is barren of any evidence of reliance upon it and action to the detriment of insured.

Respondent argues that insured, when confronted with this document, must have figured that his disclosure of a whiplash injury in recent years and its sequelae would prevent his obtaining a reinstatement; that he had the ability to pay the premium and was willing to do so, but was deterred by the considerations relating to his health.

The evidence shows that he, on March 19, 1958, borrowed $75 from his sister for the expressed purpose of paying his insurance; on the same day he deposited $81 in his bank account. This was 12 days before he received the telepost.

Before that event occurred he had drawn and used the said money in discharge of other obligations. Apparently he had later ability to pay the $80.64 premium but he surely was not willing to do so.

Rumination upon his previous intentions or his cogitations upon the possibility of making a health showing sufficient to obtain a reinstatement is but speculation upon possibilities. And such speculation does not amount to any evidence at all. A mere possibility is not an inference and multiplication of possibilities does not create one. " 'Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given case, is a question of fact for the jury.' [Citation.] An inference cannot be based on mere possibilities; it has been held that it must be based on probabilities. [Citations.] This accords with the general principle, enunciated more than once by this court, that in civil cases the rule of decision is a rule of probability only. [Citations.]'' (*Sanders* v. *MacFarlane's Candies,* 119 Cal.App.2d 497, 500 [259 P.2d 1010].) "Liability is never premised upon purely speculative assumptions. [Citations.] 'An inference cannot be based on mere possibilities; it has been held that it must be based on probabilities.' [Citations.]'' (*Brocato* v. *Standard Oil Co.,* 164 Cal.App.2d 749, 758 [331 P.2d 111].) *Estate of Kuttler,* 185 Cal.App.2d 189, 204, 205 [8 Cal.Rptr. 160], says: "*Reese* v. *Smith,* 9 Cal. 2d 324, 328 [70 P.2d 933] : ' "If the existence of an essential fact upon which a party relies is left in doubt or uncertainty, the party upon whom the burden rests to establish that fact should suffer, and not his adversary. (*Patterson* v. *San Francisco etc. Ry. Co.,* 147 Cal. 178 [81 P. 531].) A judgment cannot be based on guesses or conjectures. (*Puckhaber* v. *Southern Pac. Co.,* 132 Cal. 363 [64 P. 480].) And, also, 'A finding of fact must be an inference drawn from evidence rather than on a mere speculation as to probabilities without evidence. A majority of chances never can suffice alone to establish a proposition of fact, since the slightest real evidence would outweigh all contrary probabilities.' (23 Cor. Jur., § 1750, p. 18.)'' ' . . . What constitutes substantial evidence, as distinguished from mere possibility or speculation, is clarified in the following passage from *Estate of Teed, supra,* 112 Cal.App.2d 638, 644 [247 P.2d 54] : 'The sum total of the above definitions is that, if the word "substantial" means anything at all, it clearly implies that such evidence must be of ponderable legal significance. Obviously the word

cannot be deemed synonymous with "any" evidence. It must be reasonable in nature, credible, and of solid value; it must actually be "substantial" proof of the essentials which the law requires in a particular case.' *Fewel & Dawes, Inc.* v. *Pratt,* 17 Cal.2d 85, 89 [109 P.2d 650] : 'If, however, the evidence is so slight and tenuous that it does not create a real and substantial conflict the finding may be set aside. (*Ibid.*) "There must be more than a conflict of words to constitute a conflict of evidence. The contrary evidence must be of a substantial character, such as reasonably supports the judgment. . . ." ' " To the same effect see *Robinson* v. *Board of Retirement,* 140 Cal.App.2d 115, 118 [294 P.2d 724] ; *Rodela* v. *Southern Calif. Edison Co.,* 148 Cal.App.2d 708, 712 [307 P.2d 436] ; *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.,* 182 Cal. App.2d 162, 165-166 [5 Cal.Rptr. 738]. See also *Vernon* v. *Equitable Life Assur. Soc. of United States,* 15 Wn.2d 94 [129 P.2d 801, 805 [5], 146 A.L.R. 642].

As the pleas of estoppel and waiver rest upon nothing more substantial than speculation upon possibilities, I would reverse.

A petition for a rehearing was denied March 13, 1962. Ashburn, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied April 11, 1962. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.