[No. 25486. *En Banc.* July 20, 1935.]

MARY REILLY *et al., Appellants,* v. NEW YORK LIFE INSURANCE COMPANY, *Respondent.*[1]

[1]Reported in 47 P. (2d) 840.

*G. E. Lovell,* for appellant.

*Graves, Kizer & Graves,* for respondent.

TOLMAN, J.—This action was instituted to recover damages for the alleged wrongful cancellation of a policy of life insurance.

Plaintiff Burke was the insured, and plaintiff Reilly was joined as plaintiff because she was named as the beneficiary in the policy. The complaint alleges the issuance of the policy, a compliance with its terms by the insured, and that the insurer, while the policy was in good standing, renounced and refused to be bound thereby, to the damage of the plaintiffs.

The answer consists of appropriate denials and affirmative defenses to the effect that the insured permitted the policy to lapse by nonpayment of the premium, and thereafter, in applying for and obtaining its reinstatement, she misrepresented and concealed material facts respecting her physical condition; on account of which and upon the discovery of the truth, the insurer rescinded the reinstatement, thereby leaving the policy lapsed and terminated by reason of the nonpayment of premiums.

By the reply, the plaintiff pled that, in notifying the insured of the intent to rescind the reinstatement, the insurer based its action upon the ground of misrepresentation alone, and thereby waived its right to assert any other ground as a cause for the rescission.

Upon these issues, the case went to trial before a jury; the facts were largely stipulated and are now wholly undisputed. Upon the conclusion of plaintiffs' case, the defendant challenged the sufficiency of the evidence and moved for a judgment of dismissal, whereupon the plaintiff waived the jury and offered to submit the issues to the court. The court appears to have granted the defendant's motion. In any

event, it entered a judgment dismissing the action with prejudice, and the plaintiffs have appealed from that judgment.

The controlling facts, stated briefly, are that the insured was a woman in the prime of life, of considerable business experience and not inexperienced in life insurance matters. She apparently had full knowledge of the effect thereof when she failed to pay the premiums due in February, 1933. On May 8, 1933, she signed an application for the reinstatement of the policy, in which she stated that she was then in the same condition of health as she was when the policy was originally issued some five years before. The application was mailed at a date not disclosed, but it was not actually received at the office to which it was addressed and for which it was intended until May 16, 1933.

On May 10, 1933, two days after the date of the application and six days before it was received by the insurer in due course of mail, the insured suffered a hemorrhage of the lungs, and was advised by two physicians that the hemorrhage was probably caused by tuberculosis. On May 14, 1933, still before her application reached the insurer, she suffered another hemorrhage, and was definitely informed by a third physician that she was suffering from tuberculosis. On May 15, 1933, the insured entered a sanitarium, where she remained for nearly ten months.

On May 16, 1933, the insurer received and acknowledged receipt of the application and informed the insured that it would be necessary for her to furnish a statement from a physician and surgeon who (as disclosed by the application) had performed an operation upon her in November, 1931. Early in June, 1933, a statement showing that the insured had fully recovered from the operation was furnished; and the

branch office, which theretofore had handled the matter, sent all of the papers to the home office of the insured to be passed upon by its board of medical examiners, whose duty it was to determine whether the application for reinstatement should be granted.

With no knowledge of the hemorrhages or the tubercular condition, the insurer reinstated the policy and so informed the insured under date of June 28, 1933. On August 23, 1933, the insured made claim for disability benefits under the policy because of her tubercular condition and claimed that her total disability began on May 14, 1933. This was the first information or intimation received by the insurer that the insured was not in perfect health. On October 31, 1933, the insurer notified the insured that the reinstatement was rescinded. The letter, among other things, said:

". . . because of your failure to disclose to it in your application therefor, that prior to the time said application for reinstatement was signed by you you had suffered from a hemorrhage of the lungs on account of which you consulted and were treated by Dr. Lewis . . ."

The application form which the appellant executed recited that the facts stated therein were so stated "for the purpose of inducing the company to reinstate said policy,—" and she therein further certified:

"I hereby certify that the foregoing answers are full, complete and true, and agree that the company believing them to be true shall rely and act thereon."

Notwithstanding the date which the application bears, in the light of the other admitted facts and circumstances and in the absence of direct testimony as to the actual date of signing and mailing, although the insured was present and testified on the trial below, it would seem not an unreasonable inference that

the application was actually signed after the insured had reason to believe that she was suffering from tuberculosis, or at least that it was actually mailed after she had that knowledge. But, whether so or not, she was well advised as to her condition long before her application was received and acted upon; and she well knew that, unless she made disclosure, the insurer would rely and act upon what she then knew was false information.

The concealment was fraudulent and in violation of the good faith which she owed to the insurer. It must be held to be such a fraud as will vitiate the action of the insurer which was induced thereby.

Our statute says the business of insurance

". . . is public in character and requires that all those having to do with it shall at all times be actuated by good faith in everything pertaining thereto; shall abstain from deceptive or misleading practices, and shall keep, observe, and practice the principles of law and equity in all matters pertaining to such business." Rem. Rev. Stat., § 7032 [P. C. § 2908].

This means the insured as well as the insurer.

The representations as to health were continuing in character and so intended to be.

". . . well settled rule that changes in condition material to the risk which occur between the opening of negotiations for insurance and the issuance of the policy must be disclosed, as an elementary spirit of fair dealing." *Hansen v. Continental Casualty Co.,* 156 Wash. 691, 287 Pac. 894.

See, also, *Stipcich v. Metropolitan Life Insurance Co.,* 8 Fed. (2d) 285; and 277 U. S. 311, 48 S. Ct. 512.

Appellants do not seem to dispute this rule, but insist, apparently with some confidence, that such a defense has been waived, in that this is not the reason which the insurance company assigned when it

notified the insured of its action in rescinding the reinstatement. But we think it is the exact reason which was then assigned. We have already quoted from the letter assigning the reason, and while that letter does refer to the failure to disclose the truth in the application upon the supposition that the truth was known by the insured when she signed it, still that inaccuracy (if it be an inaccuracy) does not make the reason assigned anything other than the failure· to disclose the truth.

The fundamental and basic reason then assigned is

". . . your failure to disclose . . . that . . . you had suffered from a hemorrhage of the lungs on account of which you consulted and were treated by Dr. Lewis . . ."

It is impossible for us to see in this anything other than a charge of failure to disclose. Surplusage or inaccuracies as to detail cannot change the fundamental character of the reason expressed.

We are not unmindful of the rule of law with reference to waiver as exemplified by our recent case of *Reynolds v. Travelers Insurance Co.*, 176 Wash. 36, 28 P. (2d) 310, but there are no facts in this case which will permit the application of the rule. Whether the principle involved in the so-called waiver rule be strictly waiver, estoppel, or election, is quite immaterial for present purposes. The effect of the rule is that one may not mislead his adversary by assigning a false reason for terminating a contract and thereafter invoke another reason which might have been guarded against or obviated and avoided if it had been asserted at the proper time. Nothing of that nature appears in this case, and it seems unnecessary to pursue the subject further.

The appellants seem also to urge that, in cancelling the reinstatement, the insurer was bound to

tender back the premiums paid at the time of the reinstatement. The answer seems to be that there is no proof that the insured paid any premiums at that time or thereafter. It does appear, incidentally and rather obscurely, that some kind of an application for policy loan accompanied the application to reinstate. The only inference to be drawn from what is before us is that, by the credit referred to in its letter of cancellation, the insurer placed the insured in *status quo*. In the absence of evidence to the contrary, we must assume that the insured parted with nothing, that the reinstatement was made on credit, and that proper entries had been made which restore her to her former situation.

The judgment is affirmed.

ALL CONCUR.

