418 P.2d 554

Aurora A. MILLIGAN and Claude E. Milligan, Wife and Husband, Plaintiffs-Respondents,

v.

CONTINENTAL LIFE & ACCIDENT COMPANY, an insurance company, Defendant-Appellant.

No. 9719.

Supreme Court of Idaho.

Sept. 29, 1966.

Rehearing Denied Oct. 24, 1966.

Langroise, Clark & Sullivan, Boise, for appellant.

Richards, Haga & Eberle, Boise, for respondents.

McFADDEN, Chief Justice.

Mr. and Mrs. Milligan, the plaintiffs and respondents herein, instituted this action for recovery of sums they claim due under the provisions of a group health and accident policy issued by the Continental Life & Accident Company, defendant and appellant herein, to the Davidson Service Company, Mrs. Milligan's employer. Mrs. Milligan, who had previously been an employee of the Davidson Service Company, was re-employed by that company in 1959. At the time she resumed her employment with this company she was covered by the group health and accident policy, although her husband was not, as they felt they could not afford it.

On March 7, 1961, Mr. Milligan lost consciousness and was taken to the hospital. He was examined by his physician, and released the third day following hospitalization. On the day following his admission to the hospital, Mrs. Milligan informed her employer of this occurrence, and it was suggested that she make claim under the group policy, which she could not do, because she had never claimed Mr. Milligan as a dependent. It was then that Mrs. Milligan first discovered that her employer had previously commenced paying premiums for dependents' cover-

age under this policy in lieu of a salary raise, and it was suggested she take out this insurance on her husband as a dependent, and she obtained forms from her employer. Mrs. Milligan filled out appellant's form of "Health Statement with respect to Dependents," answering all questions thereon, and gave it to her employer, who submitted it to the appellant company for dependent coverage of her husband. Under the provisions of the group policy the insurance did not become effective until the employee furnished evidence of insurability satisfactory to the company for each person claimed to be dependent on such employee.

The policy provided:

"If such evidence is submitted with respect to a dependent, the employee shall become insured with respect to such dependent on the date the Insurance Company determines the evidence to be satisfactory."

On April 14, 1961, appellant determined the application and statement submitted for Mr. Milligan was satisfactory, and executed a change in the certificate of insurance to include Mr. Milligan in the coverage under the group policy, as a dependent of Mrs. Milligan.

Mr. Milligan consulted with his doctor on March 16, 1961, to learn the results of the tests and X-rays taken during his confinement in the hospital. His doctor informed him that the X-rays showed an indication of an ulcer. Milligan doubted the correctness of such diagnosis, as he had never suffered any pain, comparable to complaints of others who had ulcers. Sometime in April, 1961, before the certificate of insurance for Mr. Milligan was issued by appellant, Mrs. Milligan first learned of the doctor's diagnosis that Mr. Milligan had an ulcer. She learned this from her husband, at a time when application was being made for a life insurance policy with another company which required a higher premium because of this diagnosis.

This condition diagnosed as an ulcer had no connection with Mr. Milligan's confinement in the hospital on March 7, 1961, which the parties denominated as a syncope. Mrs. Milligan stated they were advised the condition was caused by a toxic reaction to a combination of medications and beverage consumed by Mr. Milligan. The Milligans were assured by their doctors that this was nothing serious and did not involve any organic or physical disorder. The ulcer likewise had no connection with Mr. Milligan's later illness resulting in his hospitalization, for which this action was instituted.

Mr. Milligan suffered a heart attack on October 2, 1961, for which he was confined in two hospitals. He and his wife submitted a claim to the appellant insurance company for the hospital expenses and fees for medical services for this illness. The company denied this claim and this action was instituted to recover these sums. During the course of the trial before a jury, it was stipulated that if the respondents were entitled to be covered under the policy, that the sum of $568.87 was the amount of the expenses payable under the provisions of the policy.

Mrs. Milligan in her application to have her husband covered by the insurance as a dependent answered all the pertinent questions, as follows:

"1. Have dependents had any illness during the last three years? *No. Except for colds.*

"2. Have dependents ever been seriously ill? *No.*

"3. Do you know of any impairment in physical condition or health of dependents? *No.*

"4. Do you know of any chronic ailment, disease or other condition of dependents now existing which is likely to lead to hospitalization or operation? *No.*"

"5. Has any company or association ever declined to grant insurance on the dependents?" *"No."*

In its answer to respondents' complaint seeking recovery under the policy, appellant company admitted the marital status of the parties, that a certificate had been issued including Mr. Milligan as a dependent of Mrs. Milligan under the terms of the policy, that the respondents had presented a claim, which appellant denied. Appellant generally denied other allegations of the complaint and interposed as an affirmative defense that during investigation of the claim appellant learned that Mr. Milligan had suffered a syncope and was confined to the hospital at the time the application was submitted, that thereafter he was treated for a duodenal ulcer and that Mr. Milligan had been treated for a sinus condition for which he had surgery performed to correct an obstruction; it then alleged that had it been informed of such facts in the evidence of insurability furnished, it would have determined the evidence of insurability not to be satisfactory and would have refused the dependent's insurance with respect to Mr. Milligan; that upon learning of such facts it denied the respondents' claim. By counterclaim appellant sought damages for false representation in the evidence of insurability and for attorney's fees therefor.

After the parties had completed presentation of their evidence the issue as to whether Mrs. Milligan gave "false answers to the questions on the Health Statement" was submitted to the jury by written interrogatories which the jury answered. The substance of the jury's answers to the interrogatories were that Mrs. Milligan did not make a false answer to the questions presented on the form she executed. The trial court entered its findings of fact incorporated in the jury's special verdict together with other facts found by the court. Conclusions of law and judgment in favor of the respondents for $568.87, plus attorney's fees of $750.00, were thereupon entered.

Appellant has taken this appeal from the judgment and from the order of the trial court denying its motion for judgment notwithstanding the verdict and its motion for new trial.

The principal contention made by appellant is that Mrs. Milligan was under an affirmative duty to notify the insurance company: (1) that her husband was confined in the hospital at the time she made the application for his insurance; and (2) that her husband had an ulcer, even though this was not discovered or known by her until after she had signed the form. Appellant asserts that under a policy of this nature any change of health or discovery of material facts increasing the risk of the company between the time of execution of an application and issuance of the policy places a burden on the applicant to notify the company of the change of health, or of discovery of the material facts, and that a failure to so notify the company nullifies any policy issued by the company after discovery of the facts. Appellant states:

"As a matter of law, the representation in the application for insurance of respondents were continuing representations, and are considered as having been made at the time of the approval of the application and issuance of the certificate of insurance on April 14, 1961, at which time both respondents knew of the X-rays and diagnosis of ulcer as to the respondent Claude E. Milligan."

In support of this contention, appellant cites the following cases: Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895; Cohen, Friedlander & Martin Co. v. Massachusetts Mut. Life Ins. Co., 166 F.2d 63 (6th Cir. 1948), cert. denied, 334 U.S. 820, 68 S.Ct. 1086, 92 L.Ed. 1750; Combs v. Equitable Life Ins. Co. of Iowa, 120 F.2d 432 (4th Cir. 1941); Reilly v. New York Life Ins. Co., 182 Wash. 460, 47 P.2d 840 (1935); Pierre v. Metropolitan Life Ins. Co., 22 Cal.App. 2d 346, 70 P.2d 985 (1937); Mutual Life Insurance Company of New York v. Bohlman, 328 F.2d 289 (10th Cir. 1964).

Stipcich v. Metropolitan Life Ins. Co., supra, decided by Supreme Court of the

United States in 1927, is one of the leading cases on this point. Therein it is stated:

"An insurer may, of course, assume the risk of such changes in the insured's health as may occur between the date of application and the date of the issuance of a policy. Where the parties contract exclusively on the basis of conditions as they existed at the date of the application, the failure of the insured to divulge any later known changes in health may well not affect the policy. [citing cases] But there is no contention here that the parties contracted exclusively on the basis of conditions at the time of the application. Here both by the terms of the application and familiar rules governing the formation of contracts no contract came into existence until the delivery of the policy, and at that time the insured had learned of conditions gravely affecting his health, unknown at the time of making his application.

"Insurance policies are traditionally contracts uberrimae fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option. [citing cases]

"Concededly, the modern practice of requiring the applicant for life insurance to answer questions prepared by the insurer has relaxed this rule to some extent, since information not asked for is presumably deemed immaterial. [citing cases]

"But the reason for the rule still obtains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy. For even the most unsophisticated person must know that in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy (citing cases), or, if a policy has been issued, it has a valid defense to a suit upon it. [citing cases]" 277 U.S. at 315, 48 S.Ct. at 513, 72 L.Ed. at 898.

See also: Annot. 8 L.R.A.,N.S., 983; 39 L.R.A.,N.S., 951; 9 Couch on Insurance 2d 346, § 38.21, § 38.22; 12 Appleman, Insurance Law and Practice, 383, § 7275.

In addition to the interrogatories returned by the jury to the effect that Mrs. Milligan did not give any false answers to the questions on appellant's form, the trial court in its second finding of fact stated:

"The evidence failed to establish that as of March 7, 1961, when said questions were answered, or April 14, 1961, when the certificate was issued insuring Claude E. Milligan as a dependent of Aurora A. Milligan, Claude E. Milligan had had any illness during the last three years; had ever had any serious illness; had any impairment in physical condition or health; or had any chronic ailment, disease or other condition likely to lead to hospitalization or operation."

This finding is of a negative character, and is reflective of the trial court's decision that the appellant herein had failed to establish its affirmative defense by a preponderance of the evidence. We cannot say that the trial court was in error in this regard. Nowhere does the record reflect any testimony establishing that the syncope suffered by Mr. Milligan in March, 1961, constituted an illness, or any impairment in physical condition or health, or was a chronic ailment, disease or other condition likely to lead to hospitalization or operation. Both respondents testified to the effect that this was the result of an unfortunate accident as they were advised

by the attending physician. The record shows that the sinus condition and operation on his nose was of a minor nature, the operation not being one deemed imperative, but only optional. The record contains no medical testimony to establish the fact that the tentative diagnosis given Mr. Milligan that he had an ulcer was correct. A paragraph of a letter from Mr. Milligan's doctor to the appellant company states:

"My records show that the patient was next seen in the office on March 16, 1961, to be given a report of the findings of his hospital investigation and it was at that time that the information of the duodenal ulcer found radiographically was made known to the patient. Therapy was begun as of this same date and recovery was quite rapid and satisfactory."

But contrary to this Mr. Milligan testified that he had never suffered any pains comparable to what he observed with fellow employees he knew had suffered from ulcers; that the medication was not prescribed but recommended and could be purchased without prescription, and that it was recommended he watch his diet more closely, although he was not given a written diet. Mr. Milligan testified that he did not believe he ever suffered from an ulcer. Mrs. Milligan also testified that she was also doubtful as to whether Mr. Milligan suffered from an ulcer.

Thus there was a conflict between the testimony of Mr. and Mrs. Milligan and the statement contained in the doctor's letter, and a conflict between the inferences to be obtained from this evidence. While the jury was not specifically asked to resolve this issue, the trial court itself by the finding quoted above resolved this issue in favor of the respondents. Under such state of the record this court cannot say that as a matter of law the trial court was in error in this finding. Eagan v. Colwell, 86 Idaho 525, 388 P.2d 999 (1964); Milbert v. Carl Carbon, Inc., 89 Idaho 471, 406 P.2d 113 (1965).

While the rule of law contended for by the appellant may be correct, under the facts found by the jury in its special verdict and by the trial court, we cannot see where it is applicable. For, unless the fact first be established that there was a material change in Mr. Milligan's physical condition between the time of the application and the issuance of the certificate, which change would actually increase the risk, or a material change in the facts upon which Mrs. Milligan relied in giving her answers, it is difficult to see how respondents can be charged with failure to notify the appellant of such change of condition or of facts during this period. The jury found the questions were not falsely answered at the time the application was executed, and the trial court found that on April 14, 1961, the date of the certificate the evidence failed to establish that which appellant contends to be the fact. We do not find reversible error committed in failure to apply the rule of law contended for by appellant.

Appellant contends the trial court erred in limiting the issues of fact it presented to the jury for determination, claiming that the trial court should have expanded the issues to encompass resolution of whether respondents learned of material facts between the time of execution of the application and issuance of the certificate which they should have disclosed to appellant. I.R.C.P. 49(a) pertaining to special verdicts and interrogatories provides in part as follows:

"* * * The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the

court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

No demand was made by appellant that further issues be submitted to the jury before it retired. The instructions, together with the form of the interrogatories, were submitted to appellant and respondents prior to submission to the jury. There was no error committed by the trial court in this regard. Furthermore the trial court made specific findings on the issues appellant claims should have been submitted to the jury.

In view of the conclusions of this court on the principal questions presented, detailed discussion on the remaining assignments is not warranted, as they reflect no errors of prejudicial nature having been committed.

Judgment affirmed.

Costs to respondents.

McQUADE and SPEAR, JJ., concur.

WEBB, D. J., sat at the hearing but resigned prior to release of the opinion.

RASMUSSEN, District Judge (dissenting).

This matter is submitted to us on the testimony of the plaintiffs as to the occurrence of the events leading up to the application for a policy of insurance and the events after the application was made up to the issuance of the certificate on April 14, 1961. It is interesting to note that the only medical testimony presented to the trial court in this matter was presented by the plaintiffs. On page eight of the transcript at line twelve the question was asked of Mr. Milligan:

"Q And you were told you had a heart condition, is this correct?

"A Yes."

This is the only direct reference to Mr. Milligan's condition requiring his hospitalization in the fall of 1961. No other medical testimony appears. On page thirty-eight of the transcript at line seven the question is asked:

"Q Would you state please what the doctor told you his condition was on the evening of March 7, 1961?

"A He said he was coming out of it—

"MRS. KLEIN: If the Court please, we will object to that on the ground that it is hearsay.

"MR. RODEN: I would state that this does not go to the truth of what the doctor said but merely to the question of this witness's state of mind and intent at the time she filled out the application.

"THE COURT: I will admit it for that purpose.

"Q Mrs. Milligan, what did Dr. Forney tell you your husband's physical condition was on the evening of March 7, what caused his unconsciousness?

"A He told me he had had a toxic reaction from drinking Vodka and taking an antibiotic and stomach pills all at the same time and that there was nothing wrong with him, he would keep him there for observation over night."

This is the only reference in the testimony to the physical condition of Mr. Milligan at the time of his entry to the hospital on March 7, 1961. Counsel for the plaintiff and the majority have concluded that this problem occurring on March 7, 1961, was a syncope. However, there is no medical testimony to conclude this as the testimony offered was only for the purpose to show a state of mind of the witness in relation to her filling out the application to include her husband as a dependent under the insurance policy. Mrs. Milligan testified that she had been assured by the doctors that her husband was not suffering from any permanent disability on March 7, 1961, and that his condition at that time was not the result of a permanent impairment of his health.

Mrs. Milligan and Mr. Milligan testified at various times that they knew the doctor

had diagnosed an ulcer and that he had prescribed treatment for this ulcer and that Mr. Milligan had ceased taking baking soda in treatment of his stomach disorders and was now taking gelusil as recommended by the doctor.

Mr. Milligan testified that he had been taking soda for his stomach disorders which he concluded were the result of over-eating or over-drinking, and that he concluded and his wife concluded that he did not have an ulcer and that the doctor was mistaken. His conduct following the doctor's diagnosis, however, indicated, by his concern for the taking of gelusil, his awareness in applying for a life insurance policy, and the fact that he no longer treated his stomach disorders with soda, that he believed he did have an ulcer. The trial court submitted special interrogatories to the jury in which he posed the questions of whether Mrs. Milligan gave false answers to the questions contained in the medical report, to-wit:

Question: "Have dependents had any illness during the last three years?"

Question: "Have dependents ever been seriously ill?"

Question: "Do you know of any impairment in physical condition or health of dependents?"

Question: "Do you know of any chronic ailment, disease or other condition of dependents now existing which is likely to lead to hospitalization or operation?"

The jury answered all of these questions in the negative. The court then followed this instruction with this following instruction:

"QUESTION NO. 2.

If you answered all of Questions No. 1 (a) through 1(d) 'No,' then you need not answer these questions; however, if you answered any of the questions No. 1 (a) through 1(d) 'Yes,' then you must answer these additional questions with reference to the question or questions which you found to have been answered falsely by Aurora A. Milligan in the

'Health Statement with Respect to Dependents (Plaintiffs' Exhibit Number Three).''

The questions put were this then:

A. Were any of said false answers material to the defendant company's risk?

B. At the time Aurora A. Milligan answered said question or questions did she know that any of said answers were false?

C. At any time before April 14, 1961, when the Certificate (Plaintiffs' Exhibit Number Four) extending coverage to plaintiff Claude E. Milligan was issued, did either of the plaintiffs know that any of said questions had been answered falsely?

D. Were any of said questions answered falsely with intent to deceive the defendant insurance company?

From the wording of these questions to the jury in that they were not to answer the second group of questions unless they answered the first or a portion thereof "yes" precluded from the jury the determination if the plaintiffs knew of a change of condition of fact as to the health and condition of Mr. Milligan after March 8, 1961, but prior to April 14, 1961. The transcript is replete with testimony of both parties that each of them knew of the doctor's diagnosis of an ulcer existing prior to April 14, 1961.

From the testimony of the plaintiffs and from the testimony of Mr. Kirkpatrick, the existence of an ulcer affects the issuance of an insurance policy both as to the life of the insured or to any health or hospitalization policy of the insured. The good health of the proposed insured is a condition precedent to the issuance of a policy, and only the insuring company can waive a physical condition existing in the insured.

The record does not support the finding of the trial court to the effect that there was no serious illness or impairment in

physical condition or health or any chronic ailment, disease or condition likely to lead to hospitalization or operation.

Certainly the facts of this case bring it within the rule of law set forth in the decisions cited by the majority wherein it is stated:

"If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so, the company may, despite its acceptance of the application decline to issue a policy (citing cases), or if a policy has been issued, it has a valid defense to a suit upon it."

This court is not here called upon to determine whether or not the insurance company would have accepted the plaintiff Mr. Milligan as a dependent under the existing insurance policy issued to the group Mrs. Milligan belonged to. This court is only called upon to rule upon whether or not the plaintiffs were aware of a change of condition of fact concerning Mr. Milligan's health at the time the policy was issued and that this change of condition was not communicated to the insuring company giving them the opportunity to rule whether or not they would accept Mr. Milligan as an insured dependent.

This court should not take away from the insuring company their right to make this determination.

It is my conclusion that the trial court erred in not submitting to the jury by special interrogatories the question of the knowledge of the plaintiffs at the time the policy was issued, and further in finding that there was no evidence that Mr. Milligan was suffering from any serious illness or impairment in physical condition or health or chronic ailment, disease or other condition likely to lead to hospitalization or operation. For this reason, this matter should be reversed and remanded for a new trial.