Wayne KUNZ; Olive Kunz; Glenn V. Turner; Carol Turner,
Plaintiffs–Appellants,

v.

UTAH POWER & LIGHT CO.,
Defendant–Appellee.

No. 87–4361.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1988.

Withdrawn from Submission
September 28, 1989.

Resubmitted April 6, 1990.

Decided Aug. 29, 1990.

---

L.F. Racine, Jr., Racine, Olson, Nye, Cooper & Budge, Pocatello, Idaho, for plaintiffs-appellants.

Stephen S. Dunn, Merrill & Merrill, Pocatello, Idaho, for defendant-appellee.

Before SKOPIL, D.W. NELSON and BRUNETTI, Circuit Judges.

D.W. NELSON, Circuit Judge:

This case was originally submitted on November 1, 1988. It was withdrawn from submission on September 28, 1989 following our certification of several questions to the Idaho Supreme Court on March 22, 1989. The Idaho Supreme Court responded on April 3, 1990. This case is hereby re-submitted.

Various landowners ("Landowners") brought suit against the Utah Power & Light Company ("Utah Power") for damages to real and personal property caused by water discharged from a lake used as a water storage system by Utah Power. The district court subsequently dismissed all causes of action set forth by the Landowners, except negligence, for failure to state a cause recognized by Idaho law. In a special verdict, the jury found that Utah Power was not negligent and the court entered judgment for Utah Power. The Landowners appealed, contending that the court below erred in dismissing its alternative, non-negligence theories of liability.

We certified several questions to the Idaho Supreme Court to determine the applicable standard of liability in cases involving damages caused by the deliberate, although non-negligent, discharge of water stored for irrigation and related purposes into a natural stream. The Idaho Supreme Court held that only a negligence standard applies in these circumstances. Accordingly, we affirm the district court's dismissal of the Landowners' alternative theories of liability. The Landowners have also challenged the propriety of the jury instructions on negligence, as well as several evidentiary rulings. We find these assertions to be meritless and we now affirm the district court as to its other rulings.

## FACTUAL AND PROCEDURAL BACKGROUND [1]

Bear Lake lies on the border between Idaho and Utah. Bear River begins high in the Uinta Mountains of Utah, meanders back and forth between Utah and Wyoming, flows north some distance into Idaho, and turns back south into Utah, where it ends in the Great Salt Lake. Bear River does not naturally enter Bear Lake, but rather flows past it a few miles to the north. In about 1917, however, the prede-

---

1. This court in *Kunz v. Utah Power & Light Co.*, 526 F.2d 500, 501–02 (9th Cir.1975) (*"Kunz I"*), described the Bear River system involved in this case. This background discussion borrows extensively from that opinion.

cessor of Utah Power constructed Stewart Dam on the river, diverting the river's flow southward via canals into Mud Lake, which connects with Bear Lake. Bear Lake is thereby utilized as a reservoir.

After the water reaches Bear Lake, it flows northward out of the lake, by gravity or through pumping, via an outlet canal to rejoin the old natural bed of Bear River some distance north of Stewart Dam. Between certain maximum and minimum limits (the height of the release gates and the depth of the pumping intake facilities), Utah Power can control the flow out of Bear Lake and can close the lake so that the flow continues directly down the river. The use of Bear Lake for water storage is the central feature of the entire system. The dam, canals, and the control facilities are located within Idaho.

Utah Power operates the system under the authority of various federal statutes, a court decree, and the Bear River Commission. The explicit purposes for which Utah Power is commissioned to operate the system are (1) to store water for irrigation throughout the valley in Idaho and Utah below the Bear Lake facilities, and (2) to generate hydroelectric power. In addition, as *Kunz I* conclusively established, Utah Power is required to use the facilities for flood control, particularly as to the spring runoffs of the watershed. Although flood control is not one of the specified purposes imposed by the authorizations, we recognized in *Kunz I* the duty of care owed by Utah Power to Landowners to control floods. *Kunz v. Utah Power & Light Co.*, 526 F.2d 500, 502–04 (9th Cir.1975).

The Landowners are numerous farmers who own or lease riparian lands and a private irrigation company located along the Bear River below Bear Lake. Prior to 1917, much of these lands were devoted to orchard grasses and wild hays, which were dependent upon flooding from the natural spring runoffs to maintain their growth. The installation of the water storage system in 1917 harnessed the spring runoffs

and stopped the flooding, so the ranchers converted their operations to alfalfa and cereal crops, which will not tolerate floods.

Unfortunately, from 1983 through 1986, the Landowners' lands were flooded by stored and naturally flowing waters which were respectively discharged and "bypassed" by Utah Power. Injury to both real and personal property resulted.

The Landowners filed a complaint in federal district court seeking damages in negligence, strict liability, trespass, or nuisance. The liability and damages issues were bifurcated. The Landowners moved for summary judgment on the liability issue. The court below dismissed all non-negligence causes of action for failure to state a claim recognized by Idaho law. In a special verdict, a jury found Utah Power not negligent. The Landowners subsequently moved for judgment notwithstanding the verdict, or alternatively, for a new trial. Both motions were denied. The Landowners appealed.

The applicable standard of liability in cases involving damages caused by the deliberate, although non-negligent, discharge of water stored for irrigation and related purposes into a natural stream was not clear under Idaho law. We accordingly certified several questions to the Idaho Supreme Court to ascertain whether a suit may be maintained in these circumstances, under Idaho law, in strict liability, direct trespass, or private nuisance.[2] The Idaho Supreme Court responded in the negative, leaving negligence as the sole basis for any potential recovery by the Landowners. *See Kunz v. Utah Power & Light Co.*, 117 Idaho 901, 792 P.2d 926 (1990).

## STANDARDS OF REVIEW

■ We review de novo the lower court's construction of Idaho law. *Matter of McLinn*, 739 F.2d 1395, 1403 (9th Cir. 1984) (en banc). We also review de novo the lower court's dismissal of the Landowners' non-negligence claims. *See Wool*

---

**2.** We did not address the "reasonable use" theory set forth by Landowners since the theory is essentially subsumed under the nuisance theory.

*v. Tandem Computers, Inc.*, 818 F.2d 1433, 1440 (9th Cir.1987). We review the court's jury instructions to determine whether they fairly and adequately cover the issue of negligence, correctly state the law, and are not misleading. *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir.1988). However, an error in jury instructions does not require reversal unless the error is more probably than not harmful. *Coursen v. A.H. Robins Co., Inc.* 764 F.2d 1329, 1337 (9th Cir.1985). Evidentiary rulings are reviewed for an abuse of discretion and are reversible only upon a showing of prejudice. *Jauregui v. City of Glendale*, 852 F.2d 1128, 1132 (9th Cir.1988).

## DISCUSSION

### A. ALTERNATIVE THEORIES OF LIABILITY

█ The Landowners first assert that the district court erred in failing to submit other theories of liability as alternatives to negligence. We were unable to determine whether, under Idaho law, an action may be maintained pursuant to non-negligence theories of liability. Because resolution of this issue necessarily involved the interpretation of ambiguous state law, we turned to the Idaho Supreme Court for guidance.[3] *See Toner v. Lederle Laboratories*, 779 F.2d 1429, 1432 (9th Cir.1986) ("Certification provides a means to obtain authoritative answers to unclear questions of state law.").

3. We certified the following three questions:
(1) Under Idaho law, may one be held liable without proof of fault for damages caused by the intentional discharge of water?
(2) Under Idaho law, may one be held liable pursuant to a direct trespass theory for damages caused by the intentional discharge of water?
(3) Under Idaho law, may one be held liable pursuant to a private nuisance theory for damages caused by the intentional, but non-negligent, discharge of water?
*Kunz v. Utah Power & Light Co.*, 871 F.2d 85, 88 (9th Cir.1989).

4. In *Burt v. Farmers' Co-operative Irrigation Co., Ltd.*, 30 Idaho 752, 767, 168 P. 1078, 1082 (1917), the Idaho Supreme Court stated:
Under the common law one who diverted water from its natural course did so at his

We essentially asked the Idaho Supreme Court to determine which of two distinct lines of Idaho cases, which apply different liability standards in circumstances similar to ours, most closely applies to the facts presented here—that is, to water from an *artificial* water diversion and storage system *intentionally* released into a *natural* stream channel. One line of cases requires a showing of negligence to impose liability for damages caused by the *accidental* escape, seepage, or percolation of water that is *artificially* brought upon the injured party's land. These so-called "escape" cases do not recognize non-negligence theories of liability.[4] *See, e.g., Stephenson v. Pioneer Irrigation District*, 49 Idaho 189, 288 P. 421 (1930); *Burt v. Farmer's Co-Operative Irrigation Co., Ltd.*, 30 Idaho 752, 168 P. 1078 (1917). The district court followed the holdings and rationales of this line of cases in dismissing the Landowners' non-negligence legal theories.

In another line of cases, the so-called "alteration or obstruction" cases, liability may be imposed without proof of negligence when a riparian owner of lands abutting a stream *intentionally* obstructs or diverts a *natural* stream, causing damages to either a riparian owner on the opposite side or to owners on land abutting above or below the stream. *See, e.g., Campion v. Simpson*, 104 Idaho 413, 659 P.2d 766 (1983); *Milbert v. Carl Carbon, Inc.*, 89 Idaho 471, 406 P.2d 113 (1965); *Fischer v. Davis*, 19 Idaho 493, 116 P. 412 (1911).[5]

peril, and was held practically to be an insurer against damage which might result from such action.... The common law has been modified and relaxed in this and other arid states, so that the owner of an irrigation ditch is only liable for damages occurring to others as a result of his negligence or unskillfulness in constructing, maintaining or operating the ditch.

5. In *Milbert v. Carl Carbon, Inc.*, 89 Idaho 471, 478, 406 P.2d 113, 117 (1965):
A riparian owner of land abutting upon a stream, whether navigable or non-navigable, has the right to place such barriers as will prevent his land from being overflowed or damaged by the stream, and for the purpose of keeping the same within its natural channel. A riparian owner, however, has no right to place obstruction into the stream for the

The Landowners rely upon the above line of cases in asserting that the Idaho Supreme Court applies an absolute liability approach to facts similar to ours.

On April 3, 1990, the Supreme Court of Idaho decided that the "escape" cases apply to the circumstances here, and accordingly, that negligence is the sole basis of recovery available to the Landowners.[6] The Idaho Supreme Court noted "the crucial role which artificial water systems serve" in Idaho and its consequent practice of limiting liability rules when applied to operators of these artificial water systems. *Kunz v. Utah Power & Light Co.*, 117 Idaho 901, 904, 792 P.2d 926, 929 (1990). It further observed the importance of irrigation canals and ditches to Idaho's extensive agricultural economy. *Id.*

In view of the Idaho Supreme Court decision, the district court must be affirmed as to its dismissal of the Landowners' non-negligence legal theories.

### B. JURY INSTRUCTIONS

█ The Landowners next contend that the jury instructions on negligence were "erroneous" and "confusing." Specifically, the Landowners argue that in asking the jury to consider the purposes for which Utah Power was authorized to operate its dam on Bear River, the jury was improperly permitted to consider the interests of wildlife, recreation, and fish and game. The Landowners assert that by allowing the jury to consider these countervailing interests, the legal duty of flood control owed to the Landowners is essentially negated in favor of these interests to which Utah Power owes no legal duty. However, the Idaho Supreme Court has stated that

one " 'owes the duty to every person to use reasonable care to avoid injury to the other person....' " *Alegria v. Payonk*, 101 Idaho 617, 619, 619 P.2d 135, 137 (1980) (quoting *Kirby v. Sonville*, 286 Or. 339, 344, 594 P.2d 818, 821 (1979)). Additionally, in judging whether the conduct of the defendant is negligent toward the plaintiff, the fact that the conduct involves an unreasonable risk of harm to a third party may sometimes be considered. 57A AM.JUR.2D *Negligence* § 151 (1989). Therefore, under a negligence standard, in order to judge the reasonableness of Utah Power's conduct, it was proper for the jury to consider the interests of all persons who may be injured by that conduct, including those persons with interests in wildlife, recreation, and fish and game.

In sum, we find that the district court properly directed the jury to consider the interests of all persons to which Utah Power owes a legal duty. Because we find that the district court did not abuse its discretion in instructing the jury on the law of negligence, it is not necessary to consider the Landowners' requested jury instructions. We accordingly affirm the district court as to its instruction of the jury.

### C. EVIDENTIARY RULINGS

█ The Landowners also argue that six of the lower court's evidentiary rulings were erroneous. The first alleged error concerns the district court's exclusion of the "1971 operating criteria" and "risk analysis curves" documents. These documents set a target level for the elevation of Bear Lake. The Landowners allege that the documents represent corporate policy

---

purpose of changing the natural channel of the stream, or for any other purpose, that would do damage to the riparian owner on the opposite side or to owners of land abutting upon the stream either above or below.

6. In response to our certification order, the Idaho Supreme Court stated:

These obstructions of the natural channel cases do not apply to the factual scenario set forth in the Ninth Circuit's certification order. Utah Power, by diverting and storing, and later releasing the flood waters of the Bear River back into the natural channel, is carry-

ing out its duty to "balance the competing factors, including irrigation, flood control, fish and wildlife, recreation and power generation." ... Balancing these competing and often conflicting interests as it must, Utah Power is only held to a standard of reasonableness, *i.e.*, negligence. As the owner and operator of the diversion and storage system, Utah Power "is not an insurer against all damages arising from [its storage system], but is liable when negligent in the construction, maintenance and operation thereof."
*Kunz v. Utah Power & Light Co.*, 792 P.2d 926, 931 (Idaho 1990) (citations omitted).

and tend to prove Utah Power's negligence by demonstrating that an unreasonably high target was set and exceeded in flood years, and that the company had notice and knowledge of the risk that flooding at higher lake elevations would occur. However, there is uncontroverted evidence that demonstrates that the 1971 report was not corporate policy during the relevant years, and the Landowners were unable to prove that the probability curves were utilized by management in making its operational decisions. Accordingly, the documents appear to be irrelevant. Additionally, the factual issues that the Landowners assert were contained in the documents, including knowledge of previous flooding, were inquired into by the Landowners at trial. Therefore, the lower court may have properly excluded this evidence pursuant to Fed.R.Evid. 402, on grounds of irrelevancy, or Fed.R.Evid. 403, on the grounds that such evidence was cumulative.

■ The Landowners also challenge the district court's admission of "Calculated Flow" evidence, contending that this evidence was irrelevant, misleading, and distracting. This evidence compares the hypothetical natural flow of Bear River in the absence of Utah Power's facilities, with the actual artificial flow resulting from Utah Power's operations. This evidence, demonstrating the volume of water with which the Landowners would have been required to deal had the runoff been unregulated by Utah Power, as well as the length of time that would have been needed, is relevant because it demonstrates Utah Power's reasonableness in regulating the water. Accordingly, this evidence was properly admitted by the district court.

■ The district court also admitted evidence on behalf of Utah Power regarding fisheries, wildlife, and recreational interests affected by Utah Power's operations. As discussed above, evidence of all interests that risk injury from Utah Power's conduct is relevant to a consideration of the reasonableness of Utah Power's conduct. The court, however, excluded the testimony of Mr. Mickelson, which was offered by the Landowners in order to demonstrate the

adverse affect of flooding on downstream wildlife. Although this evidence may have been relevant, we do not find that the Landowners suffered prejudice as a result of the district court's denial of Mr. Mickelson's scant testimony as to what he observed regarding the effects of flooding on wildlife. Accordingly, we find no reversible error here.

■ The Landowners also claim that the court erred in excluding (1) evidence of land ownership, flood easements along the Bear River, and power and revenues generated from Utah Power's hydroplants, and (2) prior flood claims against Utah Power. Evidence of revenues and ownership of land and flood easements was presented by the Landowners to show Utah Power's business motive in its operation of Bear Lake. However, neither motive nor intent are material in a negligence action, see 57A Am.Jur.2d Negligence §§ 35–36 (1989), and therefore, the district court could have concluded that evidence tending to prove a business motive for Utah Power's conduct was excludable as irrelevant pursuant to Fed.R.Evid. 402.

Additionally, evidence of prior flood claims could have properly been excluded as cumulative, pursuant to Fed.R.Evid. 403, since it was offered to prove knowledge or notice of previous flooding, and there was already substantial evidence indicating that Utah Power had notice of prior flooding. Additionally, if any of these claims resulted in offers to compromise, they are properly excluded under Fed.R.Evid. 408.

■ The Landowners additionally challenge the admission of press releases on behalf of Utah Power, claiming that the evidence was both self-serving and hearsay. However, the press releases were not offered to prove their truth, see Fed.R. Evid. 801(c), but rather to show that the Landowners had notice of the potential flooding circumstances through newspaper and radio. Moreover, the court cautioned the jury not to consider this evidence for its content. Additionally, this evidence was relevant because it rebutted the Landowners' assertion that Utah Power failed to provide advance warning of the floods.

606

] Finally, the Landowners challenge the exclusion of evidence regarding Utah Power's downstream contractual irrigation requirements. The Landowners specifically challenge the exclusion of Exhibit 55, consisting of the opinions and calculations of Dr. Brockway, regarding the amount of water actually required to meet Utah Power's contractual irrigation requirements. This evidence was offered by the Landowners to demonstrate that Utah Power had overstated its irrigation needs. However, Exhibit 55 was properly excluded by the lower court, because Dr. Brockway admitted that the numbers which provided the basis for his opinion and calculations in Exhibit 55 were less than the actual irrigation requirements. Additionally, the Landowners fail to outline the nature of the related testimony that they claim was improperly excluded. Therefore, the lower court cannot be said to have abused its discretion in excluding this evidence.

The Landowners have not proven that the trial court's evidentiary rulings constitute an abuse of discretion, and we accordingly find no reversible error.

## CONCLUSION

The district court's judgment in favor of the Utah Power is affirmed.

AFFIRMED.